**UNITED STATES of America**

v.

**Samuel PATRICK, Defendant.**

**No. CRIM.A. 96–10047–REK.**

United States District Court, D. Massachusetts.

April 13, 1998.

---

Michael J. Liston, Glass, Seigle & Liston, Boston, MA, for Randall Robinson, Defendant.

Joan M. Griffin, Casner & Edwards, Boston, MA, for Francis Coleman, Defendant.

Roger A. Cox, Ashland, MA, Michael F. Natola, Natola & Natola, Peabody, MA, for Michael Coleman, Defendant.

William J. Keefe, Jamaica Plain, MA, for Michael Handy, Defendant.

David Duncan, Zalkind, Rodriquez, Lunt & Duncan, Boston, MA, for Shawn Lewis, Defendant.

Alice E. Moore, Mahoney, Hawkes & Goldings, Boston, MA, John M. Russell, Jr., Hull, MA, for Terrence Williams, Defendant.

Lois M. Lewis, Law Office of Lois M. Lewis, West Newton, MA, for Dana Coleman, Defendant.

George W. Vien, U.S. Attorney's Office, OCDETF Division, Criminal, Boston, MA, for U.S.

Paul E. Troy, Paul G. Lannon, Sherburne, Powers & Needham, Boston, MA, for Samuel Patrick, Defendant.

James J. Cipoletta, Cipoletta & Ogus, Revere, MA, for Eugene Terrell Patrick, Defendant.

Roger Witkin, Boston, MA, for Darius Hines, Defendant.

William M. White, Jr., Davis, Robinson & White, Boston, MA, for Dana A. Hines, Defendant.

Benjamin D. Entine, Lynn, MA, for Jason Arthur, Defendant.

Thomas J. Ford, Boston, MA, for Allen Ivy, Defendant.

Diana L. Maldonado, Federal Defender Office, Boston, MA, for Cecil McKnight, Defendants.

Elliot M. Weinstein, Boston, MA, for Gordon Robinson, Defendant.

Thomas C. Horgan, Boston, MA, Jonathan Shapiro, Stern, Shapiro, Weissberg & Garin, Boston, MA, for John Robinson, Defendant.

## Memorandum and Order

KEETON, District Judge.

### I. Factual Background

The facts recited here are in most respects undisputed. Included also, however, are findings made by the court after an evidentiary hearing on March 10, 1998.

On August 29, 1996, Samuel Patrick was arrested on a federal warrant. Before the arrest, police were observing a local bar called Frank's Place, where they understood Samuel Patrick to be socializing. Patrick's vehicle (a 1991 blue Ford Explorer) was parked nearby. Law enforcement officers among those in the team who participated in planning and executing the arrest saw defendant Patrick leave Frank's Place, get into his sport utility vehicle, and drive away. Groups of officers participating in the arrest, located in three separate vehicles they were using, followed defendant Patrick for a short time. Two of the vehicles were equipped with emergency lights and the other (operated by Officer Gregory Brown) was not so equipped. This moving surveillance continued until de-

fendant Patrick had reached what the officers considered to be a safe area in which to make an arrest, in circumstances reducing as far as possible the likelihood that the arrest would be observed and reported to others as to whom other arrest warrants had been issued. At that point, operators of the two vehicles equipped with emergency lights activated the lights. They did not activate any audible emergency signals. Defendant Patrick stopped his vehicle. The officers arrested him without incident. A member of the law enforcement team drove Patrick's vehicle to the Victory Road Armory where, four hours after Patrick's arrest, other law enforcement officers did a warrantless search of Patrick's vehicle. The officers doing the search were at least three, and possibly four, in number. In a heating vent in the dashboard on the driver's side of the vehicle, they found, inside a sock, a .44 caliber revolver and ammunition. They seized the revolver and ammunition.

## II. Procedural Background

Defendant Patrick filed a Motion to Suppress and Request for an Evidentiary Hearing (Docket No. 121, filed February 26, 1997). The government filed its Memorandum in Opposition to Defendant Patrick's Motion to Suppress (Docket No. 179, filed August 15, 1997). The government argued then, and continues to argue now, that the officers had probable cause to believe that Patrick's vehicle contained drugs. *See id.* at 6. Another point raised by the government's filing in opposition was that defendant Patrick had not asserted any expectation of privacy with respect to the Ford Explorer and that his Motion to Suppress must fail on that ground. *See* Government's Memorandum in Opposition (Docket No. 179 at 3). Defendant Patrick responded by filing with the court an affidavit asserting his expectation "that the contents of this motor vehicle would remain private." Affidavit of Samuel Patrick in Support of Motion to Suppress (Docket No. 229 at ¶ 4).

The government submitted the affidavit of Boston Police Officer Gregory Brown in further support of its Opposition (Docket No. 262, filed December 29, 1997). Officer Brown's affidavit asserted that probable cause to believe that Patrick's vehicle contained drugs was based on information obtained from four cooperating witnesses and a confidential informant, and a hand-to-hand drug transaction conducted under surveillance by law enforcement. According to this affidavit, Cooperating Witness Number One (CW–1)

> stated that CW–1 saw a secret compartment (otherwise known as a hide) inside Patrick's blue sport utility vehicle. CW–1 specified where that hide was located. On more than one occasion, CW–1 saw Defendant Patrick remove cocaine from that hide.

Brown Affidavit (Docket No. 262 at ¶ 7).

In preparation for the evidentiary hearing, the government submitted a Supplemental Memorandum in Opposition to Defendant Patrick's Motion to Suppress (Docket No. 346, filed February 25, 1998) in which it argued that the search of Patrick's vehicle was lawful as a search incident to arrest.

On March 10, 1998, the court held an evidentiary hearing on Samuel Patrick's Motion to Suppress. The government called three witnesses: Officer Gregory Brown of the Boston Police Department, Detective Kevin McGill of the Boston Police Department, and Trooper Kevin O'Neil of the Massachusetts State Police. After hearing the testimony and receiving seven government and four defense exhibits the court requested further briefing on five separate issues: (1) Are officers, when having probable cause *to arrest* a person in that person's vehicle, limited in the same or instead in somewhat different ways with respect *to search* of the vehicle, depending on whether the arrest is with or instead without a warrant? (2) Is public safety a relevant interest, in addition to officer safety, with respect to any limitations upon searching a vehicle incident to arrest? (3) Does this case present an issue as to whether a "good faith" *Leon* exception applies? (4) Does the automobile exception apply even when the arrest of a defendant is effected outside of his or her vehicle? (5) Should the defendant, as a part of the evidentiary hearing on his Motion to Suppress, have an opportunity to cross-examine CW–1

even if the government does not call CW–1 to testify?

Defendant Patrick filed a Supplemental Memorandum of Law in Support of Defendant Samuel Patrick's Motion to Suppress (Docket No. 364, filed March 17, 1998), and the government filed its Second Supplemental Memorandum in Opposition to Defendant Patrick's Motion to Dismiss (Docket No. 369, filed March 17, 1998). Although both sides were given the opportunity to file responses to these filings, only the government did so. The government's filing was entitled Response to Supplemental Memorandum of Law in Support of Defendant Patrick's Motion to Suppress (Docket No. 371, filed March 20, 1998).

Evidence and stipulations received at the evidentiary hearing mooted some of the factual and legal assertions of grounds for dismissal, including those growing out of the undisputed existence of two separate spaces in the dashboard area of the sport utility vehicle and misunderstandings incident to different assumptions about which space was referred to in reports and affidavits. *See* March 10, 1998 Transcript (Docket No. 384 at 87–89, 92–94, 97–98, 99–103, 108, 117–119, 120–121).

## III. Exceptions to the Search Warrant Requirement

Warrantless searches are *"per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Thus, one question before the court is whether the search of the heating vents of Samuel Patrick's 1991 Ford Explorer, occurring at the Armory to which officers had taken the vehicle after the arrest at a different location, and occurring four hours after his arrest, fell within one of the exceptions to the warrant requirement. The government has offered various arguments that the warrantless search was lawful. The court will address these arguments in order of increasing potential merit.

## A. Search Incident to Arrest

Ordinarily a search of the interior of a vehicle is lawful as a search incident to arrest. *See New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Furthermore, closed containers in the passenger compartment within the arrestee's reach may also be searched incident to arrest. *See id.* at 461, 101 S.Ct. 2860. Such a search may be conducted even if the defendant is no longer occupying the vehicle. *See id.* Permitted purposes of a warrantless search incident to arrest include protecting officers and preventing the destruction of evidence. *See id.* at 457, 101 S.Ct. 2860 (citing *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1968)).

Whether a heating vent in the dashboard is a closed container searchable under *Belton* is a question open for debate. The Court of Appeals for the First Circuit has noted that the passenger compartment includes "those areas reachable without exiting the vehicle and without dismantling door panels or other parts of the car." *United States v. Infante–Ruiz,* 13 F.3d 498, 502 n. 1 (1st Cir.1994). A "container" is "any object capable of holding another object. It thus includes closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment . . . ." *Belton,* 453 U.S. at 460 n. 4, 101 S.Ct. 2860. "The *Belton* bright-line rule likewise extends to any container within the passenger compartment even though its outward appearance might foreclose the possibility that it could hold a weapon or evidence . . . ." *United States v. Doward,* 41 F.3d 789, 793 n. 2 (1st Cir.1994), *cert. denied,* 514 U.S. 1074, 115 S.Ct. 1716, 131 L.Ed.2d 575 (1995).

The heating vent that contained the .44 revolver, seized by the officers in this case, was within defendant's reach, when he was in the driver's seat of his vehicle. Also, according to oral testimony of Detective Kevin McGill, which I find credible, no tools were required to remove the outer shield that covered the heating vent in the dashboard area where the revolver was located. I find that this heating vent area was a "container" under *Belton.*

The major obstacle, however, to accepting the government's argument that the warrantless search of the vehicle fell under the exception for a search incident to arrest is that the arrest and such a search must be *contemporaneous.* *Belton,* 453 U.S. at 460 n. 4, 101 S.Ct. 2860; *see also Infante–Ruiz,* 13 F.3d at 502 n. 1 ("Under *Belton,* when a police officer makes a lawful custodial arrest of the occupant of an automobile, the officer may, as a contemporaneous incident of that arrest, search the car's passenger compartment . . . .") (internal quotations omitted). Timing and distance, together, are exceedingly important. It is true that a search of a vehicle incident to arrest may be conducted even if the arrestee is under physical restraint some distance away. *See United States v. Jackson,* 918 F.2d 236, 240 (1st Cir.1990). But in a case where the arrestee had been taken to the police station and the car had been moved, the search was not found to be contemporaneous. *See United States v. Ramos–Oseguera,* 120 F.3d 1028, 1036 (9th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1094, 140 L.Ed.2d 149 (1998) ("This search occurred after the car was moved, the defendants were inside the police station, and the police decided to have the car towed. The search cannot be described as contemporaneous to the arrest.").

The Court of Appeals for the First Circuit, addressing specifically the temporal aspect of *Belton*'s contemporaneous requirement, has determined that a search conducted immediately after the arrest and continuing thirty seconds after the arrestee was taken from the scene was sufficiently contemporaneous, especially when compared to a 30–45 minute delay that might "raise judicial eyebrows." *Doward,* 41 F.3d at 793 n. 3 (citing *United States v. Vasey,* 834 F.2d 782, 787 (9th Cir. 1987)).

The search of Samuel Patrick's vehicle, conducted four hours later, was not contemporaneous with the arrest. This time delay eliminated any grounds of concern for officer safety or destruction of evidence. I conclude that the search of Samuel Patrick's vehicle was not contemporaneous and the search was not a lawful search incident to arrest under *Belton.*

## B. The Automobile Exception

Alternatively, the government argues that the automobile exception to the search warrant requirement applies to the search of the 1991 Ford Explorer on August 29, 1996, even if the search was not "incident to arrest." *See* Government's Memorandum in Opposition to Defendant Patrick's Motion to Suppress (Docket No. 179 at 7).

The "automobile exception" to the *search* warrant requirement has been recognized primarily, if not exclusively, in circumstances in which an arrest, with or without an *arrest* warrant, was associated with the search. It is true that requirements of proximity in time and place may have been relaxed somewhat with respect to automobile searches, but none of the precedents relied upon by the parties, or otherwise brought to my attention, appears to be directly on point as to whether time-and-place requirements have been or will be extended to a search four hours after arrest and at a different location to which the vehicle has been taken for security. Because other issues considered below are decisive of the motion in this case, I leave this issue undecided.

## C. Probable Cause to Search for Evidence of Use of the Vehicle in Furtherance of a Conspiracy to Distribute Drugs

The Supreme Court considered limits on the lawfulness of a search of an automobile for contraband without obtaining a warrant in *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The Court upheld the officers' search of the seat cushions of an automobile because

> the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief that [contraband] was being transported in the automobile which they stopped and searched.

*Carroll,* 267 U.S. at 162, 45 S.Ct. 280. The determination of probable cause must be based on "objective facts" that could justify a warrant, and not based merely on the "sub-

jective good faith" of the officers. *United States v. Ross,* 456 U.S. 798, 808, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1981).

The evidence presented by the government in this case in support of a finding that the search was lawful comes in material part from Officer Gregory Brown's affidavit and his testimony at the hearing of March 10, 1998. He testified that CW–1 reported that CW–1 saw defendant Patrick remove cocaine from a hide in his blue sport utility vehicle numerous times in June, 1996. *See also* Brown Affidavit (Docket No. 262 at ¶ 7). And CW–1 said that on July 9, 1996, CW–1 purchased 27 grams of cocaine base from defendant Patrick that Patrick retrieved from his blue sport utility vehicle. *Id.* at ¶ 8. This report from CW–1 was corroborated to the extent that surveillance agents saw Patrick driving his blue sport utility vehicle at this time. *Id.* at ¶ 9.

According to the report from CW–1, a second transaction took place between CW–1 and defendant Patrick on July 24, 1996, in which CW–1 met with Terrence Williams in order to conduct a drug transaction. On this occasion, Williams met with defendant Patrick at Patrick's blue sport utility vehicle, returned to CW–1, and gave CW–1 approximately 2 ounces of cocaine base in exchange for money that Williams returned to Patrick who was still seated in his blue sport utility vehicle. *Id.* at ¶¶ 11–12. This transaction was also observed by law enforcement officers doing surveillance. *Id.* at ¶ 12.

CW–2 stated to a law enforcement officer that CW–2 sold cocaine base for the Intervale Posse between January and June, 1996. *Id.* at ¶ 14. CW–2 stated that when Frank Coleman (CW–2's supplier) would run out of cocaine, defendant Patrick would drive up in his blue sport utility vehicle and meet with Coleman to resupply him. *Id.*

CW–3 stated to a law enforcement officer that from the spring of 1994 through the spring of 1995, CW–3 regularly saw defendant Patrick driving a black sport utility vehicle and meeting with other IVP members, who would use CW–3's residence for repackaging the drugs obtained from defendant Patrick. *Id.* at ¶¶ 16–17.

CW–4 told law enforcement that defendant Patrick asked if CW–4 wanted to buy cocaine base numerous times between April, 1994 and September, 1995, and that defendant Patrick drove a blue sport utility vehicle. *Id.* at ¶ 20.

Finally, a confidential informant told a law enforcement officer that the confidential informant had witnessed an individual meet with defendant Patrick in his blue sport utility vehicle in the winter of 1995, and after the meeting the individual showed cocaine to the confidential informant. *Id.* at ¶ 21. Furthermore, the confidential informant observed Frank Coleman meet with defendant Patrick in the blue sport utility vehicle at least three times in the spring of 1995, and that after each meeting Frank Coleman showed cocaine to the confidential informant. *Id.* at ¶ 22.

Defendant Patrick argues that the government did not have probable cause to search Patrick's vehicle because the government has not demonstrated that CW–1 is reliable or trustworthy, and, moreover, that CW–1's inability to give the exact location of the "hide" after reportedly seeing it several times demonstrates the suspect nature of CW–1's alleged statements. *See* Supplemental Memorandum of Law in Support of Defendant Samuel Patrick's Motion to Suppress (Docket No. 364 at 10).

This response on behalf of defendant Patrick misconstrues the government's argument for probable cause. The government's argument does not assert probable cause for believing defendant used the sport utility vehicle for drug transactions simply because it had information from CW–1 that this vehicle contained a hide for concealing drugs. If that were the sole basis, the credibility of Officer Brown would be critical to the disposition of this Motion to Suppress. But the government makes as well an argument that does not depend on the credibility of Officer Brown. The government argues that it had three cooperating witnesses and a confidential informant who had stated to law enforcement officials that defendant Patrick used his blue sport utility vehicle in connection with drug transactions.

Officer Brown's affidavit refers to information from these sources, but in these respects, his testimony before the court, and his affidavit, are corroborated by evidence beyond his testimony and affidavit.

CW–3 is reported by Officer Brown to have observed defendant Patrick using a *black* sport utility vehicle in drug transactions between the spring of 1994, and the spring of 1995. The discrepancy as to description (blue or black) does reduce the weight of evidence as bearing on reliability of the informant. Similarly, CW–1's inability to give officer Brown the exact location of the hide after seeing it used on more than one occasion also calls into question the reliability of CW–1's statements. But neither of these factors is alone decisive, nor are these two factors together decisive. Moreover, the issue regarding reliability of these cooperating witnesses is not material if the government's evidence shows probable cause on the basis of credible evidence from surveillance observations of the transactions among CW–1, Patrick, and Terrence Williams on July 24, 1996.

I find that it is beyond dispute that after observing a hand-to-hand drug transaction between Williams and Patrick with Patrick seated in his blue sport utility vehicle on July 24, 1996, the observing officers then had probable cause to search without a warrant the blue sport utility vehicle, and to search any cavity in the vehicle that could contain drugs. They chose not to do so, as they may well have chosen on an objectively reasonable basis because a search at that time would have compromised an ongoing investigation.

At the later time when Detective Kevin J. McGill, Trooper Kevin O'Neill, and the other law enforcement officers searched the vehicle, after Patrick's arrest, did they still have probable cause to search defendant Patrick's vehicle?

One of the arguments made by defendant Patrick is that the warrantless search of an automobile should not be upheld if conducted as a pretext to avoid obtaining a search warrant. Defendant Patrick refers to Officer Brown's testimony and affidavit indicating that law enforcement officials knew for several months before the arrest that defendant Patrick used his vehicle in conducting drug transactions, and that rather than obtain a search warrant for the vehicle, the officers waited to catch defendant Patrick in the vehicle before making the arrest. Supplemental Memorandum of Law in Support of Defendant Samuel Patrick's Motion to Suppress (Docket No. 364 at 8). On the record before me, I cannot make a finding that the choice to delay the search from the time they had first accumulated enough evidence to constitute probable cause for searching the vehicle until a later time, in the expectation that further corroborating evidence would be developed in the investigation, was made for the purpose of doing the search as part of and incident to the arrest. As noted above, the choice to delay a search of the vehicle was objectively reasonable because of the likelihood that whenever the search occurred, that occurrence would itself compromise further investigation that might otherwise have occurred in the future.

On the record before me, it cannot be genuinely disputed that defendant Patrick and his vehicle were under surveillance at Frank's Place for some time before he came out of the bar, walked to the vehicle, got into the vehicle, and drove away. Thus, the defendant is in effect arguing that the officers should have (1) arrested him inside of Frank's Place; or (2) arrested him when he emerged from Frank's place; or (3) arrested him after he drove to some other unknown location and emerged from the vehicle without ever having been stopped by the officers.

The applicable law did not require in these circumstances that the officers wait until defendant Patrick parked the vehicle and emerged from it, before they executed the arrest warrant. Such a requirement would result in undue risk that the officers would lose track of the defendant's whereabouts, or else arrest him in an unsafe location, or in a location where the arrest would be observed and reported to others for whom arrest warrants had been issued but not yet executed. I find that the officers were acting reasonably, and as applicable law permits, in not arresting Samuel Patrick either inside Frank's Place, or out on the street adjacent

to Frank's Place, given that the officers knew that warrants had been issued for many other individuals who might flee from imminent arrest, destroy evidence, or otherwise act in ways creating added risks of harm to themselves, to the arresting officers, and to the public.

Even if it may have been feasible for law enforcement officers to obtain a warrant to *search* the vehicle at the same time they obtained an *arrest* warrant, or to delay the search of the vehicle after arrest until they had obtained a *search* warrant, it does not necessarily follow that any evidence obtained through a warrantless search should be suppressed. The issue remains as to whether the search, though warrantless, was nevertheless lawful.

The law enforcement officers had probable cause to search defendant Patrick's vehicle after observing the hand-to-hand drug transaction among CW–1, Patrick, and Williams on July 24, 1996, for the reasons explained above. I find that this information was still relevant on August 29, 1996, especially in light of the quantum of corroborating information supplied by numerous cooperating witnesses and the confidential informant.

Information about drug conspiracies tends to be "fresh," in the relevant sense, longer than information about other crimes because most drug conspiracies are to some extent lasting rather than existing for only a short period of time. *United States v. Schaefer*, 87 F.3d 562, 567–68 (1st Cir.1996) ("[I]t is common ground that drug conspiracies tend to be ongoing operations, rendering timely [two- or three-year-old] information that might, in other contexts, be regarded as stale."); *United States v. Angulo–Lopez*, 791 F.2d 1394, 1399 (9th Cir.1986) ("With respect to drug trafficking, probable cause may continue for several weeks, if not months, of the last reported instance of suspect activity.")

■■■■■ "Probability is the touchstone" in making a probable cause determination. *United States v. Figueroa*, 818 F.2d 1020, 1023 (1st Cir.1987); *see also United States v. Aguirre*, 839 F.2d 854, 857–58 (1st Cir.1988) (the probable cause determination requires "the likelihood that an offense has been committed and that there is sound reason to

believe that a particular search will turn up evidence of it."). The information necessary for a probable cause determination is not the "quantum of proof necessary to convict." *United States v. Miller*, 589 F.2d 1117, 1128 (1st Cir.1978), *cert. denied*, 440 U.S. 958, 99 S.Ct. 1499, 59 L.Ed.2d 771 (1979). Rather, "[p]robability, and not a prima facie showing, of criminal activity is the standard of probable cause." *Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

Law enforcement officers, to have probable cause, must have an objectively reasonable basis to believe that a substantial and significant degree of likelihood existed that defendant Patrick's vehicle contained drugs or other evidence of drug conspiracy at the time they undertook to search it. In this case the numerous accounts of defendant Patrick's using his vehicle in drug transactions, and surveillance of a hand-to-hand transaction involving defendant Patrick's vehicle, as well as the information provided by CW–1 about the hide, amounted to compelling reason to believe he frequently carried drugs in the vehicle. Taken together, all this information provided a reasonably trustworthy basis for believing that a search of the vehicle would disclose evidence of a quantity of contraband or traces or other evidence of very recent transportation of contraband.

■■■ Defendant Patrick's argument that the evidence should be suppressed because the searching officers did not have probable cause for a search is not persuasive. Determinations of probable cause to search are based on the combined knowledge of the law enforcement officers participating in the investigation preceding the search. *See, e.g., United States v. Bizier*, 111 F.3d 214, 219 (1st Cir.1997) (finding probable cause arising from information "collectively known" to the state law enforcement community based on two controlled cocaine buys). Thus, a warrantless search of defendant Patrick's vehicle is supported by probable cause based on information known to the law enforcement officers collectively. Trooper O'Neill testified that he first conducted a dog sniff of the vehicle, a procedure consistent with acting on probable cause to search for controlled sub-

stances. The fact that the dog did not alert did not rule out the possibility that the vehicle contained evidence of recent use of the vehicle by defendant Patrick for drug transactions. Evidence of recent use of the vehicle might be evidence of a kind other than that detectable by dog sniff, or it might be evidence possibly detectable by dog sniff but not detected in fact in this instance. Furthermore, because drugs could be secreted in almost any size container or orifice in the vehicle, the officers had probable cause to search the heating vent.

In summary, the search of the heating vent in defendant Patrick's 1991 Ford Explorer was a lawful warrantless search, based on probable cause founded on information that included observations of a hand-to-hand transaction, and reasonably reliable statements of cooperating witnesses and a confidential informant. Having concluded that the Motion to Suppress must be denied for this reason, I need not and do not address issues that might be material had the Motion not been decided on this ground.

### Order

For the foregoing reasons it is ORDERED:

Samuel Patrick's Motion to Suppress (Docket No. 121) is DENIED.