UNITED STATES of America,
Plaintiff–Appellant,

v.

John Lee McLAUGHLIN,
Defendant–Appellee.

No. 98–30027.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 6, 1998.

Decided March 16, 1999.

———

Daniel S. Goodman, United States Department of Justice, Washington, D.C., for plaintiff-appellant.

Gerald M. Needham, Assistant Federal Public Defender, Portland, Oregon, for defendant-appellee.

Before: THOMPSON and TROTT, Circuit Judges, and RHOADES, District Judge.[*]

Opinion by Judge DAVID R. THOMPSON; Concurrence by Judge TROTT.

DAVID R. THOMPSON, Circuit Judge:

A police officer stopped appellee John Lee McLaughlin for driving with an illegally tinted rear window and subsequently arrested him on an outstanding warrant. Five minutes after the arresting officer drove McLaughlin from the scene, a backup officer searched McLaughlin's car and found a brick of marijuana. A warrant was obtained, and a further search revealed methamphetamine and more marijuana.

McLaughlin was charged with possession of marijuana and methamphetamine with intent to distribute, both in violation of 21 U.S.C. § 841(a)(1). The district court granted McLaughlin's motion to suppress, determining that the initial warrantless search of his car was not performed contemporaneously with his arrest and therefore could not be deemed a search incident to a lawful arrest.

Discovery of the additional drugs followed as a result of the initial search; therefore, all products of both searches were suppressed.

The government appeals. We have jurisdiction under 18 U.S.C. § 3731, and we reverse and remand.

### FACTS

On August 8, 1998, Officer Gary Bell of the La Grande, Oregon, Police Department observed McLaughlin driving with what appeared to be an illegally tinted rear window, in violation of Oregon law. Officer Bell pulled McLaughlin over without incident. Officer Bell asked McLaughlin to produce his driver's license, proof of registration, and insurance. McLaughlin produced a registration notice and insurance documents, but no driver's license. Officer Bell then called the police dispatcher, who responded that McLaughlin's driver's status was valid but that he had an outstanding warrant for failure to appear on a charge of driving with a suspended license. Upon learning of the outstanding warrant, Officer Bell radioed for a backup officer.

Officer Eckhart, the backup officer, arrived, told McLaughlin to step out of his car, and then placed him under arrest on the outstanding warrant charge. Officer Bell handcuffed and patted down McLaughlin, and placed him in the back seat of the patrol car. Officer Bell then advised McLaughlin that his car was going to be impounded pursuant to the La Grande City ordinance for driving without insurance. Officer Bell asked Officer Eckhart to take care of the impound, and then Bell drove McLaughlin to the Union County Jail.

While Officer Bell was in route to the jail, Officer Eckhart filled out impoundment forms. These forms require the officer to record information about the driver, registration, lienholder, vehicle identification number, and color of the vehicle. After completing these forms, Officer Eckhart began to search McLaughlin's car. He began his search approximately five minutes after Offi-

---

[*] The Honorable John S. Rhoades, District Judge for the Southern District of California, sitting by designation.

cer Bell had departed with McLaughlin. Approximately eleven minutes into the search, Officer Eckhart found a blue backpack behind the front passenger seat. He opened it and found a brick of marijuana.

Officer Eckhart then radioed Officer Bell and asked him to return to the scene, where Officer Bell verified that the backpack contained marijuana. Officer Bell returned to the jail and obtained McLaughlin's consent to search the entire vehicle. Notwithstanding this consent, Officer Bell requested and obtained a search warrant. A more thorough search of the car uncovered seven pounds of marijuana, three ounces of methamphetamine, a marijuana pipe, and over $1000 in cash.

McLaughlin moved to suppress all evidence seized from his car and any statements he made to the officers. The district court determined that the stop of the car was proper, but concluded that because the search was not a valid inventory search,[1] it could only be valid if it was a search incident to a lawful arrest. Holding that the search was not incident to the arrest because it was commenced five minutes after McLaughlin had been driven away from the scene, the district court suppressed all products of the search.

## DISCUSSION

We must decide whether an automobile search that is commenced five minutes after a defendant has been arrested and removed from the scene qualifies as a "search incident to arrest." We note at the outset that the Supreme Court's recent decision in *Knowles v. Iowa*, —— U.S. ——, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998), does not control this case because it involves what may be called a "search incident to a citation," not a "search incident to an arrest." Thus, N*ew York v. Belton*, 453 U.S. 454, 460–61, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), and its progeny control the present case without amendment by *Knowles*.[2] The government argues that the search was proper under *Belton*'s bright-line rule that a police officer may search the passenger compartment of an automobile and its containers as a "contemporaneous incident of [a lawful] arrest." *Id.* at 460, 101 S.Ct. 2860. We agree because the search in this case occurred during a continuous series of events closely connected in time to the arrest.

The underlying rationale of *Belton* was to provide a bright-line rule while balancing privacy and law enforcement interests: "[T]he protection of the Fourth ... Amendmen[t] 'can only be realized if the police are acting under a set of rules which, in most instances, makes it possible to reach a correct determination beforehand as to whether an invasion of privacy is justified in the interest of law enforcement.'" *Id.* at 458, 101 S.Ct. 2860 (citations omitted). Such rules are necessary because police officers engaged in an arrest on the highway have "only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront." *Id.* at 458, 101 S.Ct. 2860.

Because it is a bright-line rule that may be invoked regardless of whether the arresting officer has an actual concern for safety or evidence, we have held that the applicability of the *Belton* rule does not depend upon a defendant's ability to grab items in a car but

---

1. The search was improper as an inventory search because, according to Oregon regulations, an officer conducting an inventory search may not open any closed packages within the vehicle.

2. In *Knowles*, a police officer issued defendant Knowles a citation after stopping him for speeding. *See Knowles*, —— U.S. at ——, 119 S.Ct. at 486. Even though the officer did not arrest Knowles, the officer conducted a full search of the car without Knowles's consent or probable cause and found marijuana and a "pot pipe." *Id.* After his arrest for violation of state controlled substances laws, Knowles challenged the constitutionality of the search.

*Knowles* does not control the present case because the *Knowles* Court carved out a rule for what may be called a "search incident to citation." *Knowles* does not disturb the bright-line *Belton* rule. *Id.* at 488 (citing *Belton* with approval). Instead, the *Knowles* Court examined the historical rationales underlying "search incident to arrest" cases (officer safety and preservation of evidence) to provide guidance in "search incident to citation" cases, holding that in "search incident to citation" cases, an officer's search must be justified by either officer safety or preservation of evidence. *Id.* at 487.

rather upon whether the search is roughly contemporaneous with the arrest. *See United States v. Lorenzo*, 867 F.2d 561, 562 (9th Cir.1989) (per curiam) (adding "actual grabbable area" requirement to *Belton*'s "contemporaneous" requirement would "place this circuit at odds with current Supreme Court precedent"); *United States v. Moorehead*, 57 F.3d 875, 878 (9th Cir.1995) (the exception does "not turn upon a defendant's actual ability to grab items in the passenger compartment" of his car); *see also United States v. Nelson*, 102 F.3d 1344, 1346–47 (4th Cir. 1996) (the validity of a search incident to an arrest "does not end at the instant the risks justifying the search come to an end").

In addressing *Belton*'s requirement that a warrantless search must be a "contemporaneous incident of [the] arrest" to be valid, *Belton*, 453 U.S. at 460, 101 S.Ct. 2860, some courts have characterized the critical issue as whether the arresting officers conducted the search as soon as it was practical to do so, including whether the officers took intervening actions not directly related to the search. *See, e.g., United States v. Abdul–Saboor*, 85 F.3d 664, 668 (D.C.Cir.1996) (trial courts should focus on "whether the arrest and search are so separated in time or by intervening events that the cannot fairly be said to have been incident to the former").

In granting the motion to suppress in the present case, the district court relied heavily on *United States v. Vasey*, 834 F.2d 782 (9th Cir.1987), and *United States v. Ramos–Oseguera*, 120 F.3d 1028 (9th Cir.1997). In *Vasey*, the search of a lawfully arrested individual's car "took place anywhere from thirty to forty-five minutes after [the defendant] had been arrested, handcuffed, and placed in the rear of the police vehicle." *Vasey*, 834 F.2d at 787. The *Vasey* court explained that this interval of time took the search "outside the *Belton* prophylactic rule because it was not conducted contemporaneously with the arrest." *Id.* Similarly, the court in *Ramos–Oseguera* concluded the search of a car that occurred after the car had first been moved to the police station and then towed away did not occur roughly contemporaneously with the arrest. *Ramos–Oseguera*, 120 F.3d at 1036.

The search of McLaughlin's car is distinguishable from the searches in *Vasey* and *Ramos–Oseguera*. The length of time that passed before the search began in both cases was considerably longer than the five-minute delay in the instant search. The search in *Vasey* occurred between thirty and forty-five minutes after the arrest. Although *Ramos–Oseguera* does not specify how much time elapsed between the defendant's arrest and the search of the car, we may fairly infer that the interval was significantly greater than the five-minute delay in the search of McLaughlin's car.

Another distinguishing factor in the present case is that the delay was caused by the completion of paperwork for impounding McLaughlin's car as a result of his arrest. In *Vasey*, the thirty to forty-five minute delay was due in part to the officers holding several conversations with the defendant in an effort to obtain his consent to search the car. *Vasey*, 834 F.2d at 787. In *Ramos–Oseguera*, there was an intervening event of the arresting officers moving the defendant's car to the police station before searching it. *Ramos–Oseguera*, 120 F.3d at 1036. Here, the defendant's arrest, the filling out of the impound paperwork, and the search of his car were all part of a continuous, uninterrupted course of events, all occurring within a relatively brief period of time.

There is no fixed outer limit for the number of minutes that may pass between an arrest and a valid, warrantless search that is a contemporaneous incident of the arrest. Instead, courts have employed flexible standards such as "roughly contemporaneous with the arrest," *Moorehead*, 57 F.3d at 878, and within "a reasonable time" after obtaining control of the object of the search. *Nelson*, 102 F.3d at 1346 ("although the 'incident to arrest' justification for warrantless searches does not permit an indefinite delay in a search ... the justification does last for a reasonable time after the officers obtained exclusive control of the container that is to be searched").

The First Circuit discussed the permissible temporal leeway between a defendant's arrest and search in *United States v. Doward*, 41 F.3d 789 (1st Cir.1994). There, police

stopped the defendant for a traffic violation and then conducted a license check which revealed that he had an outstanding warrant. The defendant was ordered out of the car, handcuffed, and placed in the back of a police car. Three minutes after he had been arrested and thirty seconds after he had been driven away from the scene, a police search of the defendant's car revealed a loaded handgun. *See id.* at 791. The defendant argued that the search was not sufficiently contemporaneous with his arrest because the handgun was seized after he had been removed from the scene, at a time when there was no conceivable risk that he could have grabbed the gun. *See id.* In rejecting the defendant's argument, the First Circuit correctly explained that "[t]he *Belton* majority's circumspect use of the discrete phrase 'contemporaneous *incident* of that arrest' ... plainly implies a greater temporal leeway between the custodial arrest and the search than [the defendant] advocates." *Doward,* 41 F.3d at 793.

Also useful to our determination of whether the initial search of McLaughlin's car was lawful is our holding in *United States v. Hudson,* 100 F.3d 1409 (9th Cir.1996). In *Hudson,* a *non-vehicular* case, officers found the defendant in his bedroom in his parents' house, "ordered him out of the room, handcuffed him, removed him from the house, and continued their [security] sweep." 100 F.3d at 1413. About three minutes later, one of the officers returned to the bedroom in which the defendant had been found and conducted a search resulting in the discovery of a gun and drug paraphernalia. *See id.* We affirmed the denial of the defendant's motion to suppress, holding that a warrantless search "may be conducted shortly after the arrestee has been removed from the area" as a contemporaneous incident of an arrest. *Id.* at 1419.

Although *Hudson* involved the search of a house, not a car, it is nonetheless instructive. In *Hudson,* the search without the defendant present was valid because it was conducted as a contemporaneous incident of the defendant's arrest, even though the defendant was not then "at the scene." As the D.C. Circuit stated in *United States v. Abdul-Saboor:*

"[A] search is conducted incident to an arrest so long as it is an 'integral part of a lawful custodial process.'" *Id.* Indeed, we specifically advised trial courts not to focus upon "whether the suspect held the item in his grasp or could have reached for it at the moment of the arrest." *Id.* The relevant distinction turns not upon the moment of arrest versus the moment of the search but upon whether the arrest and search are so separated in time or by intervening acts that the latter cannot be said to have been incident to the former.

*Abdul-Saboor,* 85 F.3d at 668 (quoting *United States v. Brown,* 671 F.2d 585, 587 (D.C.Cir.1982)).

In the present case, the arrest, the filling out of the impound paperwork before searching the car, and the initial search were all one continuous series of events closely connected in time. In the words of the *Belton* court, the search was a "contemporaneous incident of [a lawful] arrest." *Belton,* 453 U.S. at 460, 101 S.Ct. 2860. Accordingly, we reverse the district court's order granting McLaughlin's motion to suppress and remand this case to the district court for further proceedings.

REVERSED AND REMANDED.

TROTT, Circuit Judge, Concurring:

I agree with the panel's conclusion that the "bright-line" rule drawn in *New York v. Belton,* 453 U.S. 454, 460–61, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), as interpreted in our precedent subsequent to that case, compels a conclusion that the search in this instance was a valid search incident to arrest. I am reminded, however, of then-Justice Rehnquist's prediction that

any search for "bright lines" [in the Fourth Amendment context is] illusory. Our entire profession is trained to attack "bright lines" the way hounds attack foxes. Acceptance by the courts of arguments that one thing is the "functional equivalent" of the other, for example, soon breaks down what might have been a bright line into a blurry impressionistic pattern.

*Robbins v. California,* 453 U.S. 420, 443, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981) (Rehnquist,

J., dissenting). Unfortunately, in our search for clarity, we have now abandoned our constitutional moorings and floated to a place where the law approves of purely exploratory searches of vehicles during which officers with no definite objective or reason for the search are allowed to rummage around in a car to see what they might find. This state of affairs should cause us to reexamine our thinking.

The "bright-line" rule of *Belton* was intended to give officers in the field a practical means of understanding the constitutional limitations on their authority. 453 U.S. at 460, 101 S.Ct. 2860. At its core, *Belton* further defined for law enforcement the "grab area" limitation on searches incident to arrest outlined in *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). In *Chimel,* the arrest occurred in a home, whereas *Belton* involved the search of a vehicle. Interpreting *Chimel, Belton* proclaimed the "passenger compartment" of a vehicle as the "grab area per se" for Fourth Amendment purposes. In doing so, however, the Court clearly said:

> Our holding today does no more than determine the meaning of *Chimel*'s principles in this particular and problematic content. It in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests.

*Belton,* 453 U.S. at 460 n. 3, 101 S.Ct. 2860.

One of the "fundamental principles" the Court referred to is that, in order for a search incident to arrest to be reasonable as opposed to merely exploratory, it must be grounded in at least one of the rationales for which the exception was created: officer safety or the preservation of evidence. *Id.* at 460, 101 S.Ct. 2860; *Chimel,* 395 U.S. at 768, 89 S.Ct. 2034.

The "search incident to arrest" is an *exception* to the Fourth Amendment requirement that a warrant must be issued prior to a search:

> It is a first principle of Fourth Amendment jurisprudence that the police may not conduct a search unless they first convince a neutral magistrate that there is probable cause to do so. This Court has recognized, however, that "the exigencies of the situation" may sometimes make exemption from the warrant requirement "imperative."

*Belton,* 453 U.S. at 457, 101 S.Ct. 2860 (quoting *McDonald v. United States,* 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153 (1948)). In the warrant context, the particularity requirement provides the safeguard against general, exploratory searches. *Maryland v. Garrison,* 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Id.* (footnote omitted). Just as the scope of the search in the warrant context is limited to those items for which there is probable cause, the searches conducted pursuant to an exception to the warrant requirement must be limited in scope to the purposes for which the exception was created.

In our application of *Belton*'s "bright-line," however, the rationales behind the search incident to arrest exception have been abandoned, the purpose has been lost, and, as Chief Justice Rehnquist predicted, little certainty remains.

The "impressionistic blur" that has been the downfall of the well-meaning *Belton* rule in this court is our case law surrounding the requirement that, in order to qualify as a search incident to arrest, the search must be "roughly contemporaneous" with the arrest. In *United States v. Vasey,* 834 F.2d 782, 787 (9th Cir.1987), we held the search was not "roughly contemporaneous" and therefore not incident to arrest where the defendant was handcuffed, placed in a police car and held thirty to forty-five minutes before the search occurred. Then, in *United States v. Moorehead,* 57 F.3d 875, 878 (9th Cir.1995), we held that a search *was* a valid search incident to arrest where the defendant was similarly handcuffed and placed in the back of a vehicle, but where the search occurred soon after arrest. Next, in *United States v. Ramos–Oseguera,* 120 F.3d 1028, 1036 (9th

Cir.1997), we found a search was not "roughly contemporaneous" because it occurred after the defendants were arrested and taken to the police station but before the police had the car towed away.

In the case before us, we face a situation where the defendant was arrested, taken from the scene, and was well on his way to the police station. Approximately five minutes after McLaughlin departed, the search took place. The search was conducted as an inventory search, but the state officers did not follow their own rules, and the case ended up in federal court on a different theory, a theory having nothing to do with what really happened. In any event, the panel concludes that this case looks more like *Moorehead* and less like *Vasey* and *Ramos–Oseguera* because of (1) the length of time that had passed (never mind the fact that we do not know how much time elapsed in *Ramos–Oseguera)* and (2) the fact that, in this case, the delay was caused by the police officer's completion of paperwork, as compared to *Vasey,* where delay was due to conversations with the defendant or *Ramos–Oseguera,* where delay caused by moving the defendant. So the law regarding searches incident to arrest now reads something like, "well, thirty-minutes is too long, but five minutes is okay and you can delay if you are filling out paperwork but not if you are interrogating or transporting the defendant." So much for bright lines.

The tragedy is not just that the rule is now so unclear that it provides little guidance to law enforcement. Of greater concern is the reality that the search incident to arrest exception has been completely severed from the historic rationales of officer safety and preservation of evidence. The questions now revolve around when and how, not *why.*

The case before us illustrates this perfectly. McLaughlin was pulled over for having an illegally tinted rear window. He was then arrested because the police discovered there was an outstanding warrant for failure to appear. The search in no way furthered officer safely: McLaughlin was handcuffed and taken away. There was no evidence to preserve. Analytically—given the evapo-ration of the inventory search basis—the search was a fishing expedition—a purely exploratory search—plain and simple.

Ironically, adherence to the rationales behind the exception would provide police officers with greater guidance than does the "bright-line" rule applied today. Officers would only have to ask themselves two questions: (1) is officer safety at risk and (2) is there evidence to preserve. If the answer to either of those questions is "yes," the search may proceed. If not, there is no reason to set aside the warrant requirement.

The Supreme Court's recent decision in *Knowles v. Iowa,* —— U.S. ——, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998), provides reasoning that should be equally applicable here. Addressing the preservation of evidence rationale, the Court stated: "Once Knowles was stopped for speeding and issued a citation, all the evidence necessary to prosecute that offense had been obtained. No further evidence of excessive speed was going to be found either on the person of the offender or in the passenger compartment of the car." *Id.* at 488. Officer safety was not implicated because Knowles was not arrested but instead issued a citation. *Id.* at 487.

While the panel correctly observes that *Knowles,* a "search incident to citation" case, is not controlling in the search incident to arrest context, the Court's reasoning in that decision illuminates the absurdity associated with allowing purely exploratory searches incident to arrest. *Cessante ratione legis cessat et ipsa lex.*[1]

---

1. "The reason for the law ceasing, the law also ceases."