**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

DALE JUAN OSIFE,
*Defendant-Appellant.*

No. 04-10172

D.C. No.
CR-03-00393-FJM

OPINION

Appeal from the United States District Court
for the District of Arizona
Frederick J. Martone, District Judge, Presiding

Argued and Submitted
December 9, 2004—San Francisco, California

Filed February 22, 2005

Before: Diarmuid F. O'Scannlain, Robert E. Cowen,* and
Carlos T. Bea, Circuit Judges.

Opinion by Judge O'Scannlain

---

*The Honorable Robert E. Cowen, Senior United States Circuit Judge
for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

## COUNSEL

Robert J. McWhirter, Federal Public Defender's Office, Phoenix, Arizona, argued the cause for the appellant; Fredric F. Kay was on the briefs.

Mary Beth Pfister, United States Attorney's Office, Phoenix, Arizona, argued the cause for the appellee; Paul K. Charlton and Michael T. Morrissey were on the brief.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether the Fourth Amendment permits police to search an automobile after arresting its recent occupant, even when evidence related to the crime is unlikely to be found.

I

On January 4, 2003, Dale Osife got out of his pickup truck in the parking lot of a grocery store in Phoenix, Arizona. He urinated on the ground next to his truck and then walked into the store. A woman standing in the parking lot called the police, and two officers came to the scene in a patrol car. They noticed a pool of fluid next to the driver's side door of Osife's truck. Osife came out of the store, walked up to his pickup truck, and opened the door on the driver's side. One of the officers saw him take what looked like a plastic bag out of the pocket of his pants and place it on the driver's seat inside the truck. The officer approached him and told him about the report of his public urination, which Osife denied. A few minutes later, the woman who had telephoned the police returned and identified Osife as the man whom she had seen urinating. At that time Osife was still standing next to the open door of his truck. The police officer placed Osife under arrest for indecent exposure, handcuffed him, and placed him in the back of the patrol car.

Osife remained seated in the patrol car while the officer searched the passenger compartment of Osife's truck. Underneath the plastic bag on the driver's seat was a black Beretta .40 caliber pistol. The officer ran a records check on the gun and discovered that it had been stolen. The officer read Osife his *Miranda* rights and tried to question him, but Osife refused to talk.

A federal grand jury returned an indictment against Osife, charging him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The parties do not dispute that Osife had a prior conviction in the District Court of Arizona for possessing marijuana with the intent to distribute.

Osife pleaded not guilty and moved to suppress the evidence gathered during the warrantless search of his pickup truck. After an evidentiary hearing, the district court denied

Osife's motion to suppress, finding that the gun was discovered during a permissible search incident to a lawful arrest.

Osife proceeded to trial and a jury found him guilty. On March 8, 2004, the district court sentenced Osife to 57 months in prison and three years of supervised release. Osife timely appeals.

II

Osife's only contention on appeal is that the search of his truck violated the Fourth Amendment because the search was not reasonably aimed at discovering evidence related to the crime for which he was arrested.

**[1]** The Fourth Amendment, which forbids "unreasonable" searches and seizures, generally requires police to obtain a warrant before carrying out a search. There are several exceptions to the warrant requirement, however, and the Supreme Court explained one of them in *Chimel v. California*, 395 U.S. 752 (1969): when the police make an arrest, they may search the arrestee's person and the area "within his immediate control" without obtaining a warrant. *Id.* at 762-63. The Court gave two justifications for permitting such searches. First, officers need to find any weapons within the arrestee's reach in order to ensure their own safety. *Id.* Second, they need to find any evidence within reach in order to prevent the arrestee from hiding or destroying it. *Id.*

**[2]** In *United States v. Robinson*, 414 U.S. 218 (1973), the Court made clear that courts are *not* to decide on a case-by-case basis whether the arresting officers' safety is in jeopardy or whether evidence is in danger of destruction. *Id.* at 235. Rather, the Court explained, *Chimel* laid down a bright-line rule: a search of the arrestee's person and the area within his reach is *per se* reasonable and permissible under the Fourth Amendment. *Id.*

**[3]** In *New York v. Belton*, 453 U.S. 454 (1981), the Court explained how *Chimel* applies to arrests of occupants of automobiles. *Belton* laid down another bright-line rule, holding that when the police arrest the occupant (or recent occupant) of an automobile, the area they are permitted to search under *Chimel* includes the entire passenger compartment of the car —including any containers—whether or not there is a reasonable chance of finding a weapon or evidence of the crime for which the occupant was arrested.[1] *Id.* at 460-61. The Court justified this rule by observing the need for clear standards to guide officers in the field and to allow citizens to understand the contours of their rights. *Id.* at 459-60.

This much Osife does not dispute. He argues, however, that the Court's recent decision in *Thornton v. United States*, 124 S. Ct. 2127 (2004), restricts the holding of *Belton* to cases in which it is reasonable to believe that the automobile contains evidence related to the crime for which the defendant was arrested.

We turn, therefore, to an examination of *Thornton*. There, a police officer, while driving, noticed that Thornton was slowing down his own car to avoid driving next to the officer. *Id.* at 2129. Suspicious, the officer ran a license plate check and discovered that Thornton's license tags were registered to a vehicle that did not match the one he was driving. *Id.* Before the officer could pull him over, Thornton drove into a parking lot and got out of his car. *Id.* The officer followed him into the parking lot, got out of his own car, and approached. *Id.* He asked Thornton if he could pat him down, and Thornton agreed. The officer felt a bulge in Thornton's jacket and asked

---

[1]In *Knowles v. Iowa*, 525 U.S. 113 (1998), the Supreme Court held that the search-incident-to-arrest doctrine applies only when the officer actually arrests the suspect; that is to say, there is no corresponding exception for a "search incident to citation." *Id.* at 118-19. The Court's opinion in *Knowles* cast no doubt upon—indeed, it emphasized—the bright-line nature of the exception in cases involving an arrest. *Id.*

whether he had any illegal narcotics. *Id.* Thornton admitted that he did and pulled out several bags of marijuana and cocaine, whereupon the officer arrested him, handcuffed him, and placed him in the back of the patrol car. *Id.* He then searched Thornton's car and found a 9-millimeter handgun under the driver's seat. *Id.* Thorton was charged with, among other things, being a felon in possession of a handgun. *Id.* His motion to suppress the handgun was denied, and a jury convicted him. He appealed, arguing that the handgun should have been suppressed because he was no longer inside the car when the officer first approached him. *Id.*

**[4]** The Supreme Court upheld the conviction, holding that the *Belton* rule applies even when the arrestee has left the automobile by the time the arresting officer first contacts him: so long as he is a "recent occupant" of the car, the search is permissible. *Id.* at 2129, 2132. That is precisely what happened in this case. Osife does not dispute that he had recently occupied the car and was standing near it when he was placed under arrest. Nor does he dispute the validity of the arrest. *See* Ariz. Rev. Stat. § 13-3883.A.4 (2002). Under *Thornton*, then, the search was therefore permissible under the Fourth Amendment.

To argue otherwise, Osife reads *Thornton* through the lens of Justice Scalia's opinion concurring in the judgment. Joined by Justice Ginsburg, Justice Scalia took issue with *Belton*'s central premise that the passenger compartment is likely to be within the reach of an arrested automobile occupant. If this assumption was ever tenable, Justice Scalia argued, it has been rendered false by the widespread practice of placing handcuffed arrestees in patrol cars *before* searching their cars. (That, in fact, is what happened both in *Thornton* and in this case.) Justice Scalia therefore argues for a reconceptualization of *Belton*:

> [I]f we are going to continue to allow *Belton* searches on *stare decisis* grounds, we should at least

> be honest about why we are doing so. *Belton* cannot reasonably be explained as a mere application of *Chimel*. Rather, it is a return to the broader sort of search incident to arrest that we allowed before *Chimel . . . .*
>
> . . .
>
> I would therefore limit *Belton* searches to cases where it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.

*Thornton*, 124 S. Ct. at 2137 (Scalia, J., concurring in the judgment).

Were Justice Scalia's view the law of the land, the appeal would have a great deal of merit. Osife is surely right that there was no reason for the police to think that evidence of his indecent public urination would be found inside his pickup truck. Moreover, it seems to us that Justice Scalia's view is more analytically sound than the prevailing approach, which relies on the legal fiction that a suspect handcuffed and locked in a patrol car might escape and grab a weapon from the passenger compartment of his own car. *See United States v. McLaughlin*, 170 F.3d 889, 893-95 (9th Cir. 1999) (Trott, J., concurring) (arguing that "in our search for clarity, we have now abandoned our constitutional moorings and floated to a place where the law approves of purely exploratory searches of vehicles").

Nevertheless, a majority of the Court in *Thornton* squarely rejected Justice Scalia's approach. This is clear, first of all, from the fact that Chief Justice Rehnquist's opinion for the Court—joined by four other Justices except for a single footnote that Justice O'Connor declined to join—is flatly incompatible with Justice Scalia's view. The majority upheld the search on the ground that it fell within *Belton*'s bright-line rule. Justice Scalia would have *rejected Belton*'s bright-line

rule; he would have upheld the search only because Thornton's car was likely to contain additional evidence of his drug use. That is why he labeled his opinion a concurrence only "in the judgment."

Moreover, footnote 4 of Chief Justice Rehnquist's opinion explicitly rejects Justice Scalia's view:

> Whatever the merits of Justice SCALIA's opinion concurring in the judgment, this is the wrong case in which to address them. . . . Under these circumstances, it would be imprudent to overrule, for all intents and purposes, our established constitutional precedent, which governs police authority in a common occurrence such as automobile searches pursuant to arrest, and *we decline to do so at this time*.

*Thornton*, 124 S. Ct. at 2132 n.4 (footnote for a four-Justice plurality of the Court) (emphasis added). Osife seems to view this footnote as somehow indicating that the plurality agrees with Justice Scalia's approach, at least for cases in which the parties argue the issue. The footnote, however, does nothing of the sort—on the contrary, it indicates the plurality's unwillingness to join Justice Scalia in departing from the Court's bright-line rule in *Belton*.

Justice O'Connor did not join that footnote. She did, however, join all the rest of Justice Rehnquist's opinion, leaving no doubt that it commanded a majority of the Court. Moreover, Justice O'Connor wrote separately to explain that while she tentatively believed Justice Scalia's approach to be the better one, she was not ready to adopt it:

> I join all but footnote 4 of the Court's opinion. Although the opinion is a logical extension of the holding of *New York v. Belton*, I write separately to express my dissatisfaction with the state of the law in this area. As Justice SCALIA forcefully argues,

lower court decisions seem now to treat the ability to search a vehicle incident to the arrest of a recent occupant as a police entitlement rather than as an exception justified by the twin rationales of *Chimel v. California*. That erosion is a direct consequence of *Belton*'s shaky foundation. While the approach Justice SCALIA proposes appears to be built on firmer ground, I am reluctant to adopt it in the context of a case in which neither the Government nor the petitioner has had a chance to speak to its merit.

*Id.* at 2133 (O'Connor, J., concurring in part) (citations omitted). It may be that in some future case Justice O'Connor will join in Justice Scalia's approach, but she also made quite clear that she was not doing so in *Thornton*.

[5] Ultimately, then, Justice Scalia's separate opinion was rejected by seven members of the Court and embraced only by Justice Ginsburg and himself.[2] The question is not open for lower courts such as ours to reconsider.[3] The Supreme Court clearly held in *Robinson* that courts are not to consider in an individual case whether there is reason to think that evidence

[2]Justice Stevens dissented, joined by Justice Souter. Justice Stevens would have left the *Belton* rule in place but declined to extend it to arrestees already out of their vehicles by the time the police arrive. *Thornton*, 124 S. Ct. at 2140. He would therefore have held that *Chimel* alone governed such cases, allowing the police to search the immediate vicinity of the arrestee but not necessarily the entire passenger compartment of the car. *Id.*

[3]In *United States v. Smith*, ___ F.3d ___ (9th Cir. 2004), decided after *Thornton*, we upheld a search that took place just *before* the arrest to which it was incident, noting that "the critical inquiry in such cases is whether the search is roughly contemporaneous with the arrest." *United States v. Smith*, ___ F.3d ___ (9th Cir. 2004) (internal quotation marks omitted (quoting *United States v. McLaughlin*, 170 F.3d 889, 892 (9th Cir. 1999)). While we were not then faced with the argument that Osife proffers, we did apply the search-incident-to-arrest doctrine without discussing the likelihood that evidence relevant to the crime of arrest would be found. *Id.*

of the crime of arrest will be found in a search pursuant to arrest. 414 U.S. at 235 ("The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect."). When the police arrest the occupant or recent occupant of an automobile, they may search the passenger compartment of the car, whether or not the specific circumstances give reason to think that the car is likely to contain weapons or evidence.[4]

The Supreme Court declined to upset that rule in *Thornton*, and we are not at liberty to do so now. As the Supreme Court has explained, when there is clearly controlling precedent, circuit courts are not to anticipate the direction in which the Court's jurisprudence is moving: "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989). The same principle holds even when a Justice suggests, as Justice O'Connor did here, that she may change course in some future decision. Regardless of the wisdom of Justice Scalia's view, we must continue to follow the Supreme Court's holdings until they are overruled. Osife's appeal is therefore without merit.

**AFFIRMED.**

---

[4]As the Supreme Court noted in *Thornton*, "an arrestee's status as a 'recent occupant' may turn on his temporal or spatial relationship to the car at the time of the arrest." 124 S. Ct. at 2131. Osife, like Thornton, was standing next to the open car door when he was arrested. We are therefore not called upon to decide how far away from the vehicle the suspect can move before he ceases to be a "recent occupant."