# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2501

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Nebraska. |
| Angelo Barnes, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 11, 2004
Filed: July 6, 2004

_____

Before MELLOY, SMITH, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Angelo Barnes was charged with possession with intent to deliver cocaine in violation of 21 U.S.C. § 841(a)(1). Barnes moved to suppress evidence that was seized after a traffic stop during which he was arrested. After the district court[1] denied Barnes's motion, Barnes entered a conditional guilty plea, reserving the right to appeal the denial of his suppression motion. We affirm.

_____

[1]The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska.

I.

On the evening of February 18, 2002, Sergeant Van Buren of the Douglas County, Nebraska Sheriff's Department initiated a traffic stop of a Chevrolet Blazer on Interstate 80 in Omaha. The Blazer was driven by Barbara Alstyne, and Barnes was in the passenger seat.

During the traffic stop, Van Buren learned that Barnes was subject to arrest for manslaughter based on an outstanding warrant from New York. He ordered Barnes out of the Blazer, handcuffed him, and placed him in a patrol car for officer safety. Van Buren and two other officers then patted down Alstyne for weapons, and began to search the vehicle.

While searching, Deputy Degan opened the driver's side door and thought that it seemed unusually heavy. Degan then parted the rubber seal over the window well with two fingers, and looked inside with a pen light. Inside the door, Degan saw packages of the type that are used to transport illegal drugs. The deputies then pulled open the plastic interior door panel, and removed a kilo-sized package of cocaine. The officers eventually found twelve kilo-sized packages in door panels of the Blazer. The front driver's side and passenger doors each contained four kilo-sized packages, while the rear doors contained two packages each.

Barnes moved to suppress the cocaine. The district court found that the window well was within the scope of a permissible search incident to Barnes's lawful arrest. Alternatively, the district court found that the police had probable cause to search the door panel based on the deputy's observation that the driver's side door was unusually heavy.

II.

In *New York v. Belton*, 453 U.S. 454, 460 (1981), the Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." The Court observed that although it was settled that the police, to protect officer safety and preserve evidence, may search the person of an arrestee and the area within his immediate control, *see Chimel v. California*, 395 U.S. 752 (1969); *United States v. Robinson*, 414 U.S. 218 (1973), no straightforward rule had emerged concerning searches incident to the arrest of occupants of an automobile. The Court then identified the problem with the extant state of affairs: "When a person cannot know how a court will apply a settled principle to a recurring factual situation, that person cannot know the scope of his constitutional protection, nor can a policeman know the scope of his authority." *Belton*, 453 U.S. at 459-60.

To establish a workable rule, the Court relied on the "generalization" that articles inside the passenger compartment of an automobile are generally, if not inevitably, within the area into which an arrestee might reach to grab a weapon or evidence. Thus, the Court held that the police, incident to an arrest, may search the passenger compartment of an automobile, and all containers within that compartment. *Id*. at 460. The holding of *Belton* encompassed "only the interior of the passenger compartment of an automobile and [did] not encompass the trunk." *Id*. at 460 n.4.

Since 1981, courts have sought to apply the bright-line rule of *Belton* according to whether an area searched by the police is best characterized as part of the "passenger compartment" of an automobile or more akin to the "trunk." Courts have held that *Belton* permits the search of the rear compartment of a hatchback car or station wagon, *United States v. Caldwell*, 97 F.3d 1063, 1067 (8th Cir. 1996); *United States v. Pino*, 855 F.2d 357, 363-64 (6th Cir. 1988), the area beneath a vinyl cargo

cover in the back of a sports utility vehicle, *United States v. Olguin-Rivera*, 168 F.3d 1203, 1206 (10th Cir. 1999), locked and unlocked glove compartments, *United States v. Woody*, 55 F.3d 1257, 1269 (7th Cir. 1995), a secret compartment in the back seat of a car, *United States v. Veras*, 51 F.3d 1365, 1372 (7th Cir. 1995), space behind a radio or heating vent in a dashboard, *United States v. Willis*, 37 F.3d 313, 317 (7th Cir. 1994); *United States v. Patrick*, 3 F. Supp. 2d 95, 99 (D. Mass. 1998), and the area underneath a "gearshift boot" or plastic gear shift housing. *State v. Homolka*, 953 P.2d 612, 614 (Idaho 1998); *People v. Eaton*, 617 N.W.2d 363, 367 (Mich. Ct. App. 2000). On the other hand, *Belton* has been deemed insufficient authority to justify searching the engine compartment of a van, *United States v. Marchena-Borjas*, 209 F.3d 698, 700 (8th Cir. 2000), searching the trailer compartment of a tractor-trailer, *United States v. Hernandez*, 901 F.2d 1217, 1220 (5th Cir. 1990), disassembling the tailgate of a sports utility vehicle, *United States v. Patterson*, 65 F.3d 68, 71 (7th Cir. 1995), and (at least by distinguished commentators) dismantling a vehicle to get inside door panels. *See* 2 Wayne R. LaFave, et al., *Criminal Procedure* § 3.7(a), at 203 (2d ed. 1999).

The organizing principle of these cases, with which we agree, is that areas reachable by an occupant without exiting the automobile may be searched incident to arrest, but an area that is outside any occupant's reach or that could be reached only through an elaborate dismantling of the vehicle may not be searched. *See United States v. Thompson*, 906 F.2d 1292, 1298 (8th Cir. 1990) ("'Passenger compartment' has been interpreted broadly by most courts . . . and generally includes whatever area is within a passenger's reach."); *United States v. Infante-Ruiz*, 13 F.3d 498, 502 n.1 (1st Cir. 1994); *United States v. Russell*, 670 F.2d 323, 326-27 (D.C. Cir. 1982). The lawfulness of the search does not depend on whether the occupant was *actually capable* of reaching the area during the course of the police encounter. *Belton*'s bright-line rule did away with that fact-specific inquiry into reachability, and we have held that *Belton* applies even after the arrestee has been taken into custody and removed from the scene. *United States v. McCrady*, 774 F.2d 868, 871-72 (8th Cir.

1985). As long as an occupant could have reached an area while inside the vehicle, then the police may search that area incident to a lawful arrest. "The need for a clear rule, readily understood by police officers and not depending on differing estimates of what items were or were not within reach of an arrestee at any particular moment, justifies the sort of generalization which *Belton* enunciated." *Thornton v. United States*, 124 S. Ct. 2127, 2132 (2004).

The search incident to arrest in this case involved the area immediately inside the rubber window seal, where Deputy Degan placed his pen light. That area is reachable by an occupant without exiting the vehicle, and an occupant could conceal contraband, evidence, and certain weapons inside the window seal. Small packages of drugs, drug paraphernalia such as syringes or razors, documentary evidence, and potential weapons such as small knives or letter openers could fit inside that area. While seated in the driver's seat, one could easily part the rubber strips with two fingers, just as Deputy Degan did, to hide or retrieve such objects. Accordingly, we hold that the deputy's parting of the window seal and intrusion into the area immediately below the seal falls within the scope of a lawful search incident to arrest.

Once Officer Degan placed his pen light inside the window seal, he was able to illuminate the compartment within the door panel. Even if the officer were not permitted to remove the door panels themselves pursuant to *Belton*[2], nothing prohibits him from using his lawful access to the area inside the window seal to gain a view

---

[2]The deputies testified that they were able to pry the plastic and vinyl away from the interior frame of the door to gain access to the packages of the cocaine. The record does not reveal precisely how much time was required to access the compartment behind the door panel, or whether the deputies needed any special tools to access the area. It may well be that if the compartment could have been opened quickly by an occupant simply by peeling away plastic and vinyl with his bare hands, rather than elaborately dismantling the vehicle, then removal of the door panels would be permissible under *Belton*. In the circumstances of this case, however, we need not reach that question.

-5-

into the compartment behind the panels. *United States v. Beatty*, 170 F.3d 811, 814 (8th Cir. 1999); *United States v. Hatten*, 68 F.3d 257, 261 (8th Cir. 1995). From his lawful vantage point, the deputy immediately recognized the packages hidden inside the door panels as probable contraband. At that juncture, he had probable cause to search the entire vehicle, and he was permitted to do so without a warrant. *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam). Thus, the cocaine was lawfully seized, and it does not represent the fruit of an illegal search.

Because we conclude that the officer's disputed conduct was based on a lawful search incident to arrest, we need not reach the district court's alternative holding that the entire search was justified by probable cause. The judgment of the district court is affirmed.

SMITH, Circuit Judge, dissenting.

I believe the search inside the door panels in this case exceeded the scope of a search incident to a valid arrest. Police authority to search the passenger compartment of an automobile after the lawful arrest of its occupants is clear. *New York v. Belton*, 526 U.S. 295 (1981). The scope of the search includes the passenger compartment and any containers within the compartment. *United States v. Wells*, 347 F.3d 280, 287-288 (8th Cir. 2003). As noted by the majority, the area that constitutes the passenger compartment has been interpreted broadly–however, it does have limits. *United States v. Marchena-Borjas*, 209 F.3d 698 (8th Cir. 2000) (a search incident to arrest under the hood of the defendant's van did not comport with *Belton's* principles).

At the time Officer Degan parted the window well's rubber seal and peered in with a penlight, Barnes was in handcuffs in the back of a patrol car, and Alstyne, who had also been searched for weapons, was well outside of the vehicle. There simply was no exigency. The majority justifies the search based upon Officer Degan's

suspicions aroused by a heavy door. The majority notes that the area immediately inside the rubber seal was reachable by an occupant and could conceivably conceal prohibited items including weapons. I do not believe that either Barnes or Alstyne posed any threat to the officers by their hypothetical ability to pry back the rubber seal of the car window and retrieve a weapon or deposit contraband. I share the concern expressed by Justices O'Connor and Scalia in *Thornton* that some may view a search incident to an arrest as "a police entitlement." *Thornton v. United States,* ___ U.S. ___, 124 S.Ct. 2127, 2133 (2004) (O'Connor, J., concurring); *id.* at ___, 124 S.Ct. at 2134 (Scalia, J., joined by Ginsburg, J., concurring separately). I cannot agree that the facts of this case bring this search within the bounds of a *Belton* search incident to arrest.

_____