# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2111

_____

United States of America,          *
          *
        Appellant,       *
          *    Appeal from the United States
    v.               *    District Court for the
          *    District of Nebraska.
Zachary Hrasky,         *
          *
        Appellee.       *

_____

Submitted: October 13, 2005
Filed: July 18, 2006

_____

Before RILEY, JOHN R. GIBSON, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Zachary Hrasky was charged by a grand jury with unlawful possession of a firearm by a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1). Prior to trial, he moved to suppress evidence, including two firearms, obtained during a search of his vehicle. The district court granted the motion, and the government appeals. *See* 18 U.S.C. § 3731. We reverse.

## I.

On July 2, 2004, at approximately 3:45 p.m., Nebraska State Trooper Jeff Wallace stopped a truck driven by Hrasky in Scotts Bluff County, Nebraska. Wallace had reason to believe that Hrasky was driving without a proper license, so he brought Hrasky to the patrol car and made further inquiry. Trooper Wallace then determined that Hrasky was driving on a suspended license and that this was his third such offense. Based on this information, Wallace handcuffed Hrasky and placed him in the back of the patrol car.

When Wallace informed Hrasky that he would not be released with a citation, Hrasky immediately expressed a strong aversion to going to jail and asked whether he could instead speak with a narcotics investigator about his knowledge of drug crimes in the area. Trooper Wallace acceded to Hrasky's request and summoned Investigator Cody Enlow, a member of the Western Intelligence Narcotics Group Task Force. Enlow arrived at the scene of the traffic stop shortly after 4:00 p.m., and entered Wallace's patrol car to speak with Hrasky.

Enlow spoke with Hrasky for approximately 45 minutes about becoming a confidential informant. During that time, Trooper Wallace reserved judgment on whether Hrasky would be subjected to a full custodial arrest and transported from the scene. If Investigator Enlow reached an agreement with Hrasky involving cooperation in drug trafficking investigations, Wallace was prepared to consider simply giving Hrasky a ticket and releasing him. Ultimately, however, it became apparent to Investigator Enlow that Hrasky was "not in a position or not ready to make" a commitment to help law enforcement. Enlow thus told Trooper Wallace that Enlow was not "going to do anything" with Hrasky, and that Wallace should proceed as he would have done before Hrasky broached the possibility of cooperation.

At approximately 5:05 p.m., Trooper Wallace, Investigator Enlow, and another officer who had arrived at the scene began a search of Hrasky's truck. While searching the passenger area of the truck's extended cab, Enlow encountered a plastic insert covering a small cubby hole. The insert was loose, so Enlow pulled it up, and he discovered two handguns beneath the plastic.

After the search was completed, Trooper Wallace called a tow truck to remove Hrasky's vehicle. The tow truck arrived at approximately 5:53 p.m., and Hrasky was then taken to jail. After he was indicted for possession of the weapons found within his truck cab, Hrasky moved to suppress the evidence uncovered during the search, arguing that it was the fruit of an unreasonable search conducted in violation of the Fourth Amendment. A magistrate judge, finding a "close question" whether the search was permissible as a contemporaneous incident of Hrasky's arrest, recommended that the defendant's motion to suppress be granted. The district court later adopted the magistrate's report and recommendation. Although the court agreed that the initial traffic stop was constitutional, it held that the search was not incident to Hrasky's arrest because it was not "contemporaneous" with the arrest. The court also rejected the government's alternative contention that the search was permissible as a standard inventory of the vehicle. On appeal, the government contends only that the search was consistent with the Fourth Amendment as a search incident to Hrasky's arrest.

II.

We are required once again to apply the "bright-line" rule of *New York v. Belton*, 453 U.S. 454 (1981), which provides that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id.* at 460. *Belton* built on *United States v. Robinson*, 414 U.S. 218 (1973), which held that a lawful custodial arrest establishes authority to conduct a full

-3-

search of the arrestee's person, and that such a search is "not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." 414 U.S. at 235. *Robinson* observed that a lawful custodial arrest, involving "the taking of a suspect into custody and transporting him to the police station," creates extended exposure to the arrestee that presents heightened danger to the arresting officer. *Id.* While the authority to search was "based upon the need to disarm and to discover evidence," the Court held that this authority "does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect." *Id.*

*Belton* similarly rejected the contention that "'there must be litigated in each case the issue of whether or not there was present one of the reasons'" supporting a search incident to arrest. 453 U.S. at 459 (quoting *Robinson*, 414 U.S. at 235). The Court sought to establish a "workable rule" for this category of cases, because "[w]hen a person cannot know how a court will apply a settled principle to a recurring factual situation, that person cannot know the scope of his constitutional protection, nor can a policeman know the scope of his authority." *Id.* at 459-60. Thus, in the case of a full custodial arrest of an "occupant" or "recent occupant" of a vehicle, *id.* at 460, the police may search the passenger compartment of the vehicle as "a contemporaneous incident" of that arrest. Such a search to ensure safety and to preserve evidence is "reasonable" under the Fourth Amendment. *Thornton v. United States*, 541 U.S. 615, 623 (2004). "The need for a clear rule, readily understood by police officers and not depending on differing estimates of what items were or were not within reach of an arrestee at any particular moment, justifies the sort of generalization which *Belton* enunciated." *Id.* at 622-23.

Applying the *Belton* rule, our court has upheld searches of automobiles incident to arrest where the arrestee has exited the vehicle and has been handcuffed and placed in a police officer's patrol car, *e.g.*, *United States v. Barnes*, 374 F.3d 601, 603 (8th Cir. 2004), or even removed from the scene entirely. *United States v. Snook*, 88 F.3d

605, 606-08 (8th Cir. 1996); *United States v. McCrady*, 774 F.2d 868, 871-72 (8th Cir. 1985). Similar cases from other courts of appeals "are legion." *Thornton*, 541 U.S. at 628 (Scalia, J., concurring in judgment) (citing cases). Because *Belton* established a "bright-line rule" permitting searches regardless of whether there is actual concern for safety or evidence in a particular case, the analysis in these decisions has focused on whether the search is "roughly contemporaneous with the arrest" or conducted within a "reasonable time" after obtaining control of the vehicle. *E.g.*, *United States v. McLaughlin*, 170 F.3d 889, 891-92 (9th Cir. 1999). It has been thought that incapacitation of the arrestee does not make a subsequent search of the vehicle unreasonable (on the theory, for example, that the search is not "contemporaneous *with* the arrest"), because *Belton*'s "circumspect use of the discrete phrase 'contemporaneous *incident* of that arrest' . . . plainly implies a greater temporal leeway between the custodial arrest and the search." *United States v. Doward*, 41 F.3d 789, 793 (1st Cir. 1994) (emphasis added by *Doward*). Despite some recent interest in rethinking the doctrine, *Thornton*, 541 U.S. at 624 (O'Connor, J., concurring in part); *id*. at 628 (Scalia, J., concurring in judgment), the binding authorities from our court are consistent with the prevailing rationale, and they guide our analysis here.

Under the *Belton* framework, we see merit in the view that the determination whether a search is a "contemporaneous" incident of an arrest involves more than simply a temporal analysis. In the context of a rule whose applicability does not depend on the presence of one of the specific reasons supporting a search incident to arrest, it is sensible to conclude that "a search need not be conducted immediately upon the heels of an arrest, but sometimes may be conducted well after the arrest, so long as it occurs during a continuous sequence of events." *United States v. Smith*, 389 F.3d 944, 951 (9th Cir. 2004). The focus should be "not strictly on the timing of the search but its relationship to (and reasonableness in light of) the circumstances of arrest." *Id.* Like our court in *Snook* and *McCrady*, the Ninth Circuit approved a search as incident to an arrest, even though it was conducted five minutes after the defendant was removed from the scene, because the arrest, the completion of required

-5-

paperwork, and the subsequent search were "one continuous series of events closely connected in time." *United States v. McLaughlin*, 170 F.3d at 893. While we have said in *dicta* that the temporal analysis for searches of luggage belonging to an arrestee is "constitutionally fairly strict," *Curd v. City Court of Judsonia*, 141 F.3d 839, 843 (8th Cir. 1998), this observation is not inconsistent with framing "the determinative question" as "whether the time and distance between elimination of the danger and performance of the search were reasonable." *United States v. Han*, 74 F.3d 537, 543 (4th Cir. 1996).

The precise context is important to the reasonableness of the search, and it is significant that during the sixty minutes that Hrasky was in the patrol car, the officers were unsure whether he would be transported to the police station for booking, or released at the scene with only a citation. A police officer seeking to apply the Supreme Court's "bright-line rules" reasonably could be concerned, if the police elected merely to issue a citation, whether a search incident to the initial arrest would have been unauthorized. *Cf. Knowles v. Iowa*, 525 U.S. 113, 118-19 (1998) (holding that "search incident to citation" violated Fourth Amendment). It was only after Hrasky was deemed unable or unwilling to assist law enforcement that the trooper determined to make a "full custodial arrest" in the sense that underlies the doctrine of searches incident to arrest – "the taking of a suspect into custody and transporting him to the police station." *Robinson*, 414 U.S. at 235; *see also Atwater v. City of Lago Vista*, 532 U.S. 318, 324 (2001); *id.* at 363-64 (O'Connor, J., dissenting).[1] The search of Hrasky's truck certainly was contemporaneous with this decision to proceed with a full custodial arrest. Although an hour had elapsed since the initial detention, we think that it was still reasonable for police to consider Hrasky a "recent occupant" of

---

[1]The Magistrate Judge relied in part on an assumption that because a "tow truck had already been called" while Hrasky bargained for his release, the vehicle would have been impounded even if Hrasky had been released with a citation. A videotape of the incident, however, shows that a tow truck was not summoned until more than thirty minutes after officers began their search of Hrasky's vehicle.

the truck. The episode began with an encounter between the trooper and Hrasky at the vehicle, and the search was the culmination of a continuing series of events at the scene arising from the traffic stop. *See United States v. Fiala*, 929 F.2d 285, 288 (7th Cir. 1991) (holding that search involved "straightforward" application of search incident to arrest doctrine, where defendant was arrested for driving without license, but search was not conducted until drug-sniffing dog arrived ninety minutes after arrest); *State v. Smith*, 813 P.2d 888, 891 (Idaho 1991) (holding that search of car at scene of arrest conducted thirty minutes after arrest was constitutional).

The scenario in this case is quite different from the unreasonable search in *United States v. Chadwick*, 433 U.S. 1 (1977), *overruled in part on other grounds by California v. Acevedo*, 505 U.S. 565 (1991), where police searched a locked footlocker found in the trunk of a vehicle belonging to an arrestee, but did so ninety minutes after the arrest, at a time when the suspects, the car, and the footlocker had been transported from the scene of the arrest to the local federal building. *Id.* at 15; *see also United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003) (declining to sanction search of automobile as one incident to arrest where arrestee and vehicle were removed from scene of arrest, and vehicle was searched at police station according to standard procedure for inventory searches). The search here took place at the scene of the arrest, immediately after the police determined to proceed with a full custodial arrest. We also find this case distinguishable from *United States v. Vasey*, 834 F.2d 782 (9th Cir. 1987), where police searched an arrestee's car some thirty to forty-five minutes after he was arrested, handcuffed, and placed in a patrol car. There was no doubt from the outset that Vasey would be subjected to a full custodial arrest, because the police learned immediately of an outstanding arrest warrant for possession of dangerous drugs. *Id.* at 784. The events between the initial detention and the search were not, as here, part of a continuing series of events related to effecting the full custodial arrest, but rather involved other avenues of investigation by the officers, including interrogation of the arrestee. *Id.* at 787; *see McLaughlin*, 170 F.3d at 892.

We are faced here with an unusual situation in which the arrestee initiated discussions with officers in an effort to persuade them to issue a citation in lieu of carrying out a full custodial arrest. Once the events played out, and the officers determined to make a full custodial arrest, the search of Hrasky's vehicle was conducted immediately. We think a police officer relying on *Belton* for a "clear rule, readily understood by police officers," *Thornton*, 541 U.S. at 623, would justifiably be confused to learn that he is authorized to search a vehicle after a suspect undoubtedly destined for full custodial arrest is handcuffed and placed in a patrol car at the scene, *Barnes*, 374 F.3d at 603, and even after a suspect has been placed in a patrol car and removed from the scene, *Snook*, 88 F.3d at 606-08; *McCrady*, 774 F.2d at 871-72, but not authorized to search a car immediately after an arrestee, still at the scene, unsuccessfully attempts to negotiate his release with a citation. Under existing doctrine as developed under *Belton*, we conclude that the search was reasonable.

The order of the district court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

JOHN R. GIBSON, Circuit Judge, dissenting.

I respectfully dissent. On July 2, 2004, at 3:45 p.m. Nebraska State Trooper Jeff Wallace stopped the truck driven by Zachary Hrasky, having reason to believe that he was driving without a proper license. When this proved to be true, the trooper handcuffed Hrasky and placed him in the back of the patrol car. Shortly after 4:00 p.m., an investigator arrived at the scene and spoke with Hrasky in the patrol car for the next forty-five minutes. Finally, at 5:05 p.m., officers began a search of Hrasky's truck and found two handguns.[2] The question before us is whether this warrantless search of Hrasky's truck, which occurred more than one hour after Hrasky's arrest for

_____

[2]This is the timing and sequence of events as found by the magistrate judge, and which a review of the videotape made by the officer's dashboard camera confirms.

driving with a suspended license, falls on the permissible side of the "bright-line" rule of New York v. Belton, 453 U.S. 454 (1981).  Because, unlike the majority, I believe that it does not, I would affirm the district court's order suppressing the firearms.

"[I]t is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'"  Mincey v. Arizona, 437 U.S. 385, 390 (1978) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)).  One such exception permits the warrantless search of a vehicle's passenger compartment "as a contemporaneous incident" of the arrest of that vehicle's occupant or recent occupant.  Belton, 453 U.S. at 460-61.  Although "[s]uch searches have long been considered valid because of the need 'to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape' and the need to prevent the concealment or destruction of evidence," id. at  457 (quoting Chimel v. California, 395 U.S. 752, 763 (1969)), it is equally well-established that "[s]earches incident to arrests are not limitless." United States v. Pratt, 355 F.3d 1119, 1121-22 (8th Cir. 2004).  Instead, they are to be treated as the exception to Constitutional norms that they are, lest officers in the field treat them as a "police entitlement." Thornton v. United States, 541 U.S. 615, 624 (2004) (O'Connor, J., concurring); United States v. Barnes, 374 F.3d 601, 605 (8th Cir. 2004) (Smith, J., dissenting), cert. denied, 543 U.S. 1079 (2005); see also Thornton, 541 U.S. at 627 (Scalia, J., joined by Ginsburg, J., concurring) ("But conducting a Chimel search is not the Government's right; it is an exception-justified by necessity-to a rule that would otherwise render the search unlawful.").  Although the Supreme Court has made it clear that courts are not to determine on a case-by-case basis whether or not one of the Chimel justifications was present, Belton, 453 U.S. at 459 (quoting United States v. Robinson, 414 U.S. 218, 235 (1973)), it nonetheless remains the government's burden to establish its entitlement to the search incident to arrest exception; if the government fails to make such a showing, the evidence must be suppressed.  See Coolidge v. New Hampshire, 403 U.S. 443, 455 (1971).

To invoke the search incident to arrest exception, the government must first demonstrate that there was a "lawful custodial arrest." Belton, 453 U.S. at 460; see also United States v. Wells, 347 F.3d 280, 287 (8th Cir. 2003) ("Once [defendant] was arrested, law enforcement was authorized to conduct a search incident to the arrest."). We have previously held that, for purposes of Belton, "a seizure of a person predicated upon probable cause is properly regarded as an arrest." Pratt, 355 F.3d at 1123. Police had probable cause to believe that Hrasky was driving under suspension when Trooper Wallace handcuffed him and placed him in the patrol car. Therefore, as the magistrate judge correctly recognized and notwithstanding the majority's suggestion to the contrary,[3] it was at this point that Hrasky was under arrest for purposes of Belton, since it was at this point that "a reasonable person would have believed that he was not free to leave." Pratt, 355 F.3d at 1122 (quoting California v. Hodari D., 499 U.S. 621, 628 (1991)).

Thus, having established that Hrasky was subject to a lawful custodial arrest for driving while suspended at the point when he was handcuffed and placed in the patrol car, the government must then show that the search of Hrasky's truck, which occurred more than one hour later, was "a contemporaneous incident of that arrest." Belton, 453 U.S. at 460. Admittedly, a review of the law in this area demonstrates that "what is 'contemporaneous' is in the eye of the beholder." United States v. Smith, 389 F.3d

---

[3]The majority suggests that the search took place "immediately after the police determined to proceed with a full custodial arrest," Maj. at 7, and finds it "significant" that "the officers were unsure whether [Hrasky] would be transported to the police station for booking, or released at the scene with only a citation." Maj. at 6. This is irrelevant to the question of whether Hrasky was subject to a "lawful custodial arrest" within the meaning of Belton. Pratt, 355 F.3d at 1124 ("An officer's uncommunicated subjective intent is irrelevant to the question of whether an individual has been seized.") (citing United States v. Mendenhall, 446 U.S. 544, 554 n. 6 (1980); United States v. Bloomfield, 40 F.3d 910, 916 (8th Cir. 1994) (en banc))

944, 954 (9th Cir. 2004) (Wardlaw, J., concurring), cert. denied, 544 U.S. 956 (2005). Nonetheless, it is well-established that "[s]earches incident to arrest have both a geographic and temporal limitation." United States v. Currence, 446 F.3d 554, 557 (4th Cir. 2006); see also Thornton, 541 U.S. at 622 ("[A]n arrestee's status as a 'recent occupant' may turn on his temporal or spatial relationship to the car at the time of the arrest and search."); United States v. Doward, 41 F.3d 789, 792 (1st Cir. 1994) (discussing "temporal and spatial limits of the bright-line rule announced in Belton"). Thus, if a search is too "remote in time or place" it cannot be fairly characterized as a contemporaneous incident of the arrest, since the justifications permitting the search to be conducted without a warrant no longer apply. Chimel, 395 U.S. at 754 (quoting Preston v. United States, 376 U.S. 364, 367 (1964)); United States v. Chadwick, 433 U.S. 1, 15 (1977), overruled in part on other grounds by California v. Acevedo, 505 U.S. 565 (1991).

The search here, conducted at the scene of the arrest, does not run afoul of the geographical limitation, notwithstanding the fact that a handcuffed Hrasky, held in the back seat of a patrol car, would have been hard-pressed to reach either evidence or weaponry stowed in the passenger compartment of his truck. See, e.g., Barnes, 374 F.3d at 604 ("The lawfulness of the search does not depend on whether the occupant was actually capable of reaching the area during the course of the police encounter.") (emphasis in original); see also Thornton, 541 U.S. at 626 (Scalia, J., concurring, joined by Ginsburg, J., concurring) (recalling Justice Goldberg's reference to "the mythical arrestee 'possessed of the skill of Houdini and the strength of Hercules.'") However, the greater than one-hour delay here between the arrest and the search does run afoul of the temporal limitation.

For a search incident to an arrest to be timely it must be "substantially contemporaneous" with the arrest. Stoner v. California, 376 U.S. 483, 486 (1964). Although this does not mean it must be "made at the same time" as the arrest, see Webster's Third New International Dictionary, 391 (1981) (defining

"contemporaneous"), we have nonetheless characterized the timeliness requirement as "constitutionally fairly strict." Curd v. City Court of Judsonia, 141 F.3d 839, 843 (8th Cir. 1998). Thus, we require police to conduct the search "hard upon the heels of the arrest." Wells, 347 F.3d at 287 (holding that where facts created doubt as to whether search followed closely after arrest, court would not sanction search as "contemporaneous" incident of arrest); see also United States v. Castaneda, 438 F.3d 891, 894 (8th Cir. 2006) (distinguishing a Belton vehicle search from a warrantless search conducted pursuant to the automobile exception, since under the latter, "the vehicle need not be immediately searched."). Accordingly, we routinely sanction searches as incident to arrest where they are conducted shortly after an arrest. E.g., Barnes, 374 F.3d at 603 (immediately after arrest); United States v. McCrady, 774 F.2d 868, 871-72 (8th Cir. 1985) (same); United States v. Snook, 88 F.3d 605, 606 (8th Cir. 1996) (approximately five minutes after arrest).

We have not, however, until today, approved of a delay between an arrest and a warrantless search claimed to be an incident of it, anywhere near as lengthy as the delay that occurred here. Nor would we have had any reason to, since the Supreme Court has refused to apply the search incident to arrest exception in the context of a similar delay, Chadwick, 433 U.S. at 15 (holding that evidence obtained from search conducted ninety minutes after arrest must be suppressed because "no exigency" justified the search as incident to the arrest), and other Circuits have, for the most part, followed suit. See, e.g., United States v. $639,558 in U.S. Currency, 955 F.2d 712, 716-18 (D.C. Cir. 1992) (holding that a thirty to forty-five minute delay rendered search too "remote in time" to sustain as incident to an arrest); United States v. Vasey, 834 F.2d 782, 787 (9th Cir. 1987) (search conducted thirty to forty-five minutes after arrest did not "follow[] closely on the heels of the arrest" and was therefore, too remote in time); see also Doward, 41 F.3d at 793 n.3 (expressly reserving question of whether delay between an arrest and search "might become so protracted as to raise judicial eyebrows in an exceptional case" and citing the delay in Vasey as this kind of "exceptional case."); but see United States v. Fiala, 929 F.2d 285, 288 (7th Cir.

-12-

1991) (holding that one and one-half hour delay between arrest and search while officers waited for drug dog to arrive was "not unreasonable").

Unlike the majority, I would follow this authority and conclude that the search here was simply too remote in time to be fairly characterized "as a contemporaneous incident" of Hrasky's arrest more than one hour earlier. Cf. Belton, 453 U.S. at 462 (approving a search that "followed immediately upon that arrest") (emphasis added). In order to reach the opposite conclusion, the majority adopts a new rule under which a search "may be conducted well after the arrest, so long as it occurs during a continuous sequence of events," Maj. at 5 (citing United States v. Smith, 389 F.3d 944, 951 (9th Cir. 2004); United States v. McLaughlin, 170 F.3d 889, 892 (9th Cir. 1999)).[4] The majority characterizes the "determinative question" under this standard as whether the delay between search and arrest was a "reasonable" one. Maj. at 5 (quoting United States v. Han, 74 F.3d 537, 543 (4th Cir. 1996)); see also Maj. at 7 (citing Fiala, 929 F.2d at 288 (evaluating delay between arrest and search for reasonableness in the circumstances)). Not only does the majority's amorphous new rule appear to conflict with our Circuit's requirement that the search "follow hard upon the heels of the arrest," Wells, 347 F.3d at 287, it makes an "impressionistic blur" of

---

[4]The majority's reliance on the Ninth Circuit's decision in Smith is all the more problematic because the precise issue there was whether "the warrantless search of a vehicle incident to a contemporaneous arrest may precede the arrest," id. at 952 (emphasis added), and not how long police may delay after arresting a suspect before searching her vehicle. Smith's holding on this issue, namely that probable cause to arrest is a sufficient substitute for a custodial arrest to trigger the Belton rule, has been specifically rejected by at least one Circuit, see United States v. Powell, --- F.3d ----, 2006 WL 1715683, *6 (D.C.Cir. June 23, 2006), and is in tension with our Circuit's cases holding that it is only after a lawful custodial arrest that law enforcement may conduct a warrantless vehicle search pursuant to Belton. E.g., United States v. Rowland, 341 F.3d 774, 783 (8th Cir. 2003) ("Because Rowland was not arrested, law enforcement could not have conducted a search incident to arrest pursuant to [Belton]"); Wells, 347 F.3d at 287 ("Once [defendant] was arrested, law enforcement was authorized to conduct a search incident to the arrest.").

-13-

Belton's bright-line rule, McLaughlin, 170 F.3d at 894 (Trott, J., concurring), thereby placing police officers in the position of making precisely the sort of ad hoc determinations Belton's bright-line rule sought to avoid. See Thornton, 541 U.S. at 623; see also United States v. Pittman, 411 F.3d 813, 816 (7th Cir. 2005) ("Police shouldn't have to carry well-thumbed copies of the multivolume LaFave treatise on search and seizure with them wherever they go."). Admittedly, the majority's new rule may not prove problematic to apply in the run-of-the-mill situation, since the delay between arrest and search will almost always be far less than that which occurred here, see, e.g., Smith, 389 F.3d at 947, 951 (search and arrest conducted at roughly the same time); McLaughlin, 170 F.3d at 891-92 (five minute delay).[5]  However, by holding

---

[5]As law enforcement and reviewing courts continue to be called upon to apply Belton, its bright-line rule may become increasingly less illuminating, especially in close cases such as this.  Indeed, some have expressed concern with the soundness of the entire Belton framework.  See e.g., Thornton 541 U.S. at 624 (O'Connor, J., concurring) (noting that "lower court decisions seem now to treat the ability to search a vehicle incident to the arrest of a recent occupant as a police entitlement rather than as an exception justified by the twin rationales of Chimel ... [This is] a direct consequence of Belton's shaky foundation."); Thornton, 541 U.S. at 625, 632 (Scalia, J., concurring, joined by Ginsburg, J., concurring) (arguing that the majority's "effort to apply [Belton] to this search stretches it beyond its breaking point" and suggesting instead that the Court "limit Belton searches to cases where it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle."); Belton, 453 U.S. at 463-64 (Brennan, J., dissenting) (fearing that the Belton majority "may signal a wholesale retreat from our carefully developed search-incident-to-arrest analysis" by "formulating an arbitrary 'bright-line' rule . . . that fails to reflect Chimel's underlying policy justifications"); United States v. Weaver, 433 F.3d 1104, 1107 (9th Cir. 2006) ("respectfully suggest[ing] that the Supreme Court may wish to re-examine this issue");  United States v. Osife, 398 F.3d 1143, 1147 (9th Cir.), cert. denied, 126 S.Ct. 417 (2005) ("Moreover, it seems to us that Justice Scalia's view is more analytically sound than the prevailing approach, which relies on the legal fiction that a suspect handcuffed and locked in a patrol car might escape and grab a weapon from the passenger compartment of his own car."); Barnes, 374 F.3d at 605 (Smith, J., dissenting) ("I share the concerns expressed by Justices O'Connor and Scalia in Thornton that some may view a search incident to an arrest as 'a police entitlement.'");

-14-

that, in some not-fully-delineated circumstances constituting a "continuous sequence of events," officers may conduct a warrantless search of a vehicle, even when more than an hour has elapsed since the arrest, the majority comes dangerously close to "transform[ing] the search incident to arrest exception into a search <u>following</u> arrest exception." <u>Vasey</u>, 834 F.2d at 788 (emphasis in original). The Constitution provides for no such exception.

For these reasons, I conclude that the search of Hrasky's truck fell on the impermissible side of <u>Belton</u>'s bright-line. Accordingly, I would affirm the well-reasoned order of the district court.

_____

<u>McLaughlin</u>, 170 F.3d at 894 (Trott, J., concurring) (stating that "in our search for clarity, we have now abandoned our constitutional moorings and floated to a place where the law approves of purely exploratory searches of vehicles"). However, the Supreme Court declined to upset <u>Belton</u> in <u>Thornton</u>, and thus it remains the standard by which to judge warrantless vehicle searches conducted as a contemporaneous incident of an arrest. <u>See</u> <u>Agostini v. Felton</u>, 521 U.S. 203, 237 (1997).

-15-