The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Mark W. **MALLOY**, Defendant–Appellant.

No. 05CA1344.

Colorado Court of Appeals, Div. I.

Jan. 10, 2008.

John W. Suthers, Attorney General, Elizabeth Rohrbough, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Andrea R. Manning, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAILEY.

Defendant, Mark W. Malloy, appeals the judgments of conviction entered on jury verdicts finding him guilty of possession of a schedule II controlled substance (methamphetamine) and criminal mischief. We affirm the judgments of conviction but remand for correction of the mittimus.

On July 12, 2004, defendant was arrested on an outstanding warrant. In his pants pocket, the police found a glass pipe of a type commonly used to smoke methamphetamine or crack cocaine. On his nearby motorcycle, in a leather backpack, the police found more than a gram of methamphetamine. They also found some lighters in the backpack.

While still at the scene of his arrest, defendant kicked out the rear window of the police car in which he was being held.

Before trial, defendant unsuccessfully moved to suppress the methamphetamine and the lighters found on his motorcycle. At trial, he presented evidence that another person, upon noticing the police, had placed the containers in his leather backpack. Defendant also elicited testimony to the effect that he kicked out the window because the inside of the police car was very hot.

As noted above, the jury found defendant guilty of possessing a schedule II controlled substance and criminal mischief, and the trial court sentenced him to thirty-nine months in the Department of Corrections.

## I. Suppression of Evidence

Defendant contends that the trial court erred in not suppressing the evidence found in the leather backpack on his motorcycle. We disagree.

The pertinent facts are undisputed. At the suppression hearing, the arresting officer testified that (1) he had been watching a certain Lakewood residence which over the past year had been associated with reports of numerous stolen vehicles, drug arrests, and weapons; (2) on July 12, 2004, he observed three men standing near a motorcycle parked in the residence's driveway; (3) he learned, through a check on the motorcycle's license plate, that the motorcycle was registered to a Thornton address and that its owner was wanted on an outstanding warrant for failing to appear on a charge of possessing narcotics equipment; (4) one man—defendant—matched perfectly the description of the registered owner of the motorcycle; (5) the arresting officer, along with several other officers who had been called upon to provide backup assistance, approached the three men; (6) defendant was then sitting on the ground, toward the front of the motorcycle, working on its foot peg; (7) after defendant acknowledged who he was, defendant was arrested and searched; (8) a pipe, commonly used for smoking methamphetamine or crack cocaine, was found in defendant's pants pocket; (9) defendant was handcuffed and placed in a patrol car; (10) the arresting officer searched defendant's motorcycle, at the direction of his sergeant, approximately thirty minutes after defendant's arrest; and (11) defendant was still at the scene when his motorcycle was searched.

The trial court concluded that the police were entitled to search the motorcycle incident to defendant's arrest. In reaching this conclusion, the court rejected defendant's assertion that the search of the motorcycle was not sufficiently contemporaneous with his arrest. The court stated:

> [I]n the area of searches of the passenger compartment of a motor vehicle, the law is fairly clear that they can go back even hours later, indeed they can go back even after the vehicle has been impounded and taken completely into their custody, they can go back without a warrant and search the passenger compartment and all containers contained within the passenger compartment of the vehicle provided only that at the time of his arrest or immediately before that the defendant was in or immediately associated with the vehicle. That seems to me to be the case here.

■ When reviewing a trial court's denial of a motion to suppress, we review the trial court's legal conclusions de novo. *People v. Haley*, 41 P.3d 666, 670 (Colo.2001).

■ Under the Fourth Amendment to the United States Constitution and article II, section 7 of the Colorado Constitution, warrantless searches are per se unreasonable unless they fall under a specifically established and well-delineated exception to the warrant requirement. *People v. Savedra*, 907 P.2d 596, 598 (Colo.1995).

■ The trial court relied on the so-called *Belton* exception to the warrant requirement. Under that exception, police are authorized to conduct a warrantless search of the passenger compartment of a motor vehicle and all containers found therein incident to the custodial arrest of an occupant or recent occupant of that vehicle. *See New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981) (announcing rule in the context of arrests of occupants of automobiles); *see also Thornton v. United States*, 541 U.S. 615, 617, 124 S.Ct. 2127, 2129, 158 L.Ed.2d 905 (2004) (extending *Belton* to situations involving arrests of "recent occupants" of automobiles); *State v. Zimmerman*, 413 So.2d 838, 839 (Fla.Dist.Ct. App.1982) (applying *Belton* to motorcycles).

At the suppression hearing, defendant asserted that a *Belton* search was improper because he was not an "occupant" or "recent occupant" of the motorcycle. Because, however, he does not make this assertion on appeal, we have no occasion to address it. *See People v. Hall*, 87 P.3d 210, 213 (Colo. App.2003) (deeming "abandoned" an argument raised in the trial court but not renewed on appeal).

Defendant now asserts, as he did in the trial court, that the *Belton* search was im-

proper because it was not conducted contemporaneously with his arrest.

Contrary to the trial court's belief, a *Belton* search must be conducted "as a *contemporaneous* incident of ... arrest." *Belton,* 453 U.S. at 460, 101 S.Ct. at 2864 (emphasis added); *see also Savedra,* 907 P.2d at 598 (under *Belton,* police may, incident to arrest, "conduct a *contemporaneous* search of the passenger compartment of [an] automobile" (emphasis added)); *cf. United States v. Johns,* 469 U.S. 478, 484, 487, 105 S.Ct. 881, 885, 887, 83 L.Ed.2d 890 (1985)(recognizing that, under the automobile exception, "[t]here is no requirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure"; and upholding warrantless search of packages in automobile three days after arrest).

Relying on *United States v. Vasey,* 834 F.2d 782 (9th Cir.1987), defendant asserts that a search of a vehicle conducted (as the trial court found here) "thirty minutes or so" after the vehicle's owner has been arrested is not a "contemporaneous" search incident to arrest, within the meaning of *Belton.* We are not persuaded.

In *Vasey,* the driver of a car unsuccessfully sought to suppress the results of a search of the car conducted by the police thirty to forty-five minutes after he had been arrested on an outstanding warrant. On appeal, the Ninth Circuit Court of Appeals concluded that the search fell outside the *Belton* exception "because it was not conducted contemporaneously with the arrest." *Id.* at 787. The court reasoned as follows:

> The officers conducted several conversations with [the defendant] while he was in the police vehicle. They exhibited no fear nor testified to any fear that [the defendant] would try to get out of the police vehicle to grab a weapon or evidence.... During the thirty to forty-five minutes that elapsed between the arrest and the warrantless search, the *Belton* Court's fear of forcing officers to make split second legal decisions during the course of an arrest evaporated and took with it the right of the officers to enter the vehicle under the guise of a search incident to arrest. Simply because the officers had the right to

enter the vehicle during or immediately after the arrest, a continuing right was not established to enter the vehicle without a warrant.

*Id.*

Since *Vasey,* at least one other court has held that, because "[a]ny need for swift action had ... disappeared," a search conducted at least thirty (and perhaps forty-one to sixty-three) minutes after an arrest was not "contemporaneous" with the arrest, and thus, not permitted under *Belton.* *United States v. $639,558 in United States Currency,* 955 F.2d 712, 716–17 (D.C.Cir.1992).

In contrast, other courts have held, with very little discussion, that when the arrestee remains at the scene of the arrest, delays of a half hour, *State v. Smith,* 120 Idaho 77, 813 P.2d 888, 891 (1991), or even up to an hour and a half, *United States v. Fiala,* 929 F.2d 285, 288 (7th Cir.1991), between arrest and search did not invalidate a *Belton* search.

We note that, over the years, the rationale underlying both *Vasey* and *$639,558 in United States Currency* has been repudiated. The courts, including the Ninth Circuit Court of Appeals itself, have recognized that the police may conduct warrantless *Belton* searches even after they have eliminated any fear related to officer safety or destruction of evidence. *See United States v. Hrasky,* 453 F.3d 1099, 1102 (8th Cir.2006) (applicability of *Belton* rule "does not depend on the presence of one of the specific reasons supporting a search incident to arrest"); *United States v. McLaughlin,* 170 F.3d 889, 891 (9th Cir. 1999) (*Belton* exception "may be invoked regardless of whether the arresting officer has an actual concern for safety or evidence" and it "does not depend upon a defendant's ability to grab items in a car"); *United States v. Doward,* 41 F.3d 789, 794 (1 st Cir.1994) ("*Belton* unmistakably forecloses all such *post facto* inquiries on actual 'reachability.' "); *People v. Graham,* 53 P.3d 658, 661–63 (Colo. App.2001) (recognizing the validity of *Belton* searches conducted while arrestees sat handcuffed in patrol cars; and upholding, as proper, a *Belton* search that commenced just as the police started to drive the handcuffed arrestee away from the scene of the arrest).

For this reason, it is now recognized that "time alone is never dispositive of the contemporaneity inquiry under *Belton.*" *United States v. Weaver*, 433 F.3d 1104, 1107 n. 1 (9th Cir.2006); *see also Hrasky*, 453 F.3d at 1102 ("whether a search is a 'contemporaneous' incident of an arrest involves more than simply a temporal analysis"); *McLaughlin*, 170 F.3d at 892 ("There is no fixed outer limit for the number of minutes that may pass between an arrest and a valid, warrantless search that is a contemporaneous incident of the arrest.").

In *State v. Haught*, 122 Idaho 104, 831 P.2d 946, 948 (Ct.App.1992)(footnote omitted), the appellate court stated, "Where the arrestee remains at the scene, a search generally—but not automatically—will be deemed sufficiently contemporaneous under *Belton.*" *See State v. Fry*, 131 Wis.2d 153, 388 N.W.2d 565, 577 (1986) ("The purposes underlying the *[Belton]* search incident to arrest exception to the warrant requirement persist while the defendant remains at the scene.").

In *United States v. Scott*, 428 F.Supp.2d 1126 (E.D.Cal.2006), the court set forth a concrete analytical framework for addressing the issue:

> [Under *Belton*], [a] valid search does not have to be "immediately upon the heels of an arrest," but can be "well after" the arrest as long as there has been a continuous sequence of events leading up to the search.... Some courts consider whether the "arresting officers conducted the search as soon as it was practical to do so," or if there were any intervening acts occurring before the search, unrelated to the search.... As another circuit court has ... observed, "[t]he relevant distinction turns not upon the moment of the arrest versus the moment of the search but upon whether the arrest and search are so separated in time or by intervening events that the latter cannot be said to have been incident to the former."

*Id.* at 1131 (quoting *United States v. Smith*, 389 F.3d 944, 951 (9th Cir.2004); *McLaughlin*, 170 F.3d at 892; and *United States v. Abdul–Saboor*, 85 F.3d 664, 668 (D.C.Cir. 1996)); *see Hrasky*, 453 F.3d at 1102 (simi-

larly quoting *Smith*, 389 F.3d at 951, with approval).

Thus, "a *[Belton]* search that commences an hour after an arrest may still be considered a search incident to arrest if the search took place as soon as it became practical." *Scott*, 428 F.Supp.2d at 1132–33 (fifty-three-minute delay between arrest and search of vehicle was reasonable because of need to set upright a vehicle overturned on a slope of an embankment and finish photographing scene); *see also Weaver*, 433 F.3d at 1106 (search, conducted ten to fifteen minutes after arrest, was sufficiently contemporaneous with arrest, where officer waited for presence of third officer to conduct a safe search of vehicle); *State v. Ullock*, 183 Wis.2d 433, 516 N.W.2d 21, 1994 WL 100324 (Wis.Ct.App. No. 93–1874–CR, Mar. 30, 1994) (unpublished order) (forty-minute delay not improper: officer did not have a duty to leave arrestee unsupervised in squad car in order to search arrestee's vehicle immediately after the arrest).

Here, the search was separated from the arrest by a little over thirty minutes. The undisputed facts in the record establish that (1) following the arrest, the arresting officer had to handcuff defendant and place him in a patrol car; (2) the police were concerned with the presence of the two other men at the scene; (3) upon the arrival and at the direction of a supervising officer, the police searched the motorcycle; and (4) defendant was still at the scene when the motorcycle was searched.

Under the circumstances, we conclude that the arrest and search here were not so separated by time or intervening events that the search cannot be said to have been incident to the arrest. *See Weaver*, 433 F.3d at 1106 ("time froze" during the ten to fifteen minutes officer stood "on the curb just waiting for the additional unit"; distinguishing *Vasey* on the ground that, unlike in *Vasey*, "where police repeatedly questioned the arrestee before conducting the search, no intervening act occurred in this case"); *Scott*, 428 F.Supp.2d at 1132 (similarly distinguishing *Vasey* on the ground that "the delay [there] occurred while the officers were having sev-

eral conversations with the defendant, attempting to obtain the defendant's consent to a search of the vehicle").

Consequently, we conclude that the half-hour or so delay in conducting the search after defendant's arrest did not invalidate the search, *see Smith,* 813 P.2d at 891, and, thus, we uphold the trial court's suppression ruling.

## II. Expert Evidence

■ We also reject defendant's contention that reversal is required because the trial court erroneously allowed the arresting police officer to opine about how methamphetamines are used, when the officer had not been endorsed as an expert witness.

In *People v. Stewart,* 55 P.3d 107 (Colo. 2002), the supreme court recognized the difficulty involved in classifying a police officer's testimony as either expert or lay opinion testimony. The court noted that "police officers regularly, and appropriately, offer testimony under [CRE] 701 based on their perceptions and experiences." *Id.* at 123. However, the court stated, "when an officer's opinions require the application of, or reliance on, specialized skills or training, the officer must be qualified as an expert [under CRE 702] before offering such testimony." *Id.*

Here, immediately prior to trial, defendant requested sanctions because the glass pipe that had been found on him had been destroyed while in police custody. In response, the trial court dismissed a charge of possession of paraphernalia. The trial court would not, however, preclude prosecution witnesses from mentioning the pipe, although they were not to characterize the pipe as drug paraphernalia.

The trial court entered a similar order with respect to lighters that had been seized from defendant's motorcycle at the time of his arrest but had not been kept as evidence (because they had been returned to him upon his release). The court ruled that the lighters could not be characterized as drug paraphernalia, but the arresting officer could describe them and testify as to how such

lighters are used to smoke methamphetamines.

When the arresting officer testified, he stated that he "had training with information on covert labs, identification on types of methamphetamines as well as other drugs and how they are used." He informed the jury that the three most common ways to use methamphetamine were to snort it, inject it, and smoke it. The officer described the types of pipes (glass or steel) and "high-volume type of lighter[s]" used in smoking methamphetamine. When asked to describe any objects found on defendant at the time of his arrest, the officer responded "a glass pipe in [defendant's] right front pants' pocket" and a "torch lighter" in his backpack.

We need not decide here whether the officer's testimony was lay or expert testimony, that is, whether it depended on a process of reasoning familiar in everyday life or on a process that can be mastered only by specialists in the field. *See People v. Veren,* 140 P.3d 131, 137, 139 (Colo.App.2005)(reversal required because officer's testimony that possession of large amounts of pseudoephedrine and other chemicals and supplies indicated an intent to manufacture methamphetamine, was expert, not lay, testimony).

This follows because, unlike the case in *Veren,* defendant here did not object to the admission of the officer's testimony on the grounds he now asserts on appeal. Consequently, reversal is not warranted in the absence of plain error. *See* Crim. P. 52(b); *People v. Kruse,* 839 P.2d 1, 3 (Colo.1992).

■ Plain error is error that is "obvious," "substantial," and "grave." It is error that seriously affects the substantial rights of the accused and so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *People v. Grant,* 174 P.3d 798, 806 (Colo.App.2007).

Here, we perceive no plain error. From our reading of the record, the officer was amply qualified because of his training and experience to testify as he did. *See People v. Lomanaco,* 802 P.2d 1143, 1145 (Colo.App. 1990) (no plain error in the receipt of unendorsed expert testimony where, inter alia,

witness was qualified to provide that testimony). Further, unlike the case in *Veren,* defendant does not argue that he was surprised by the officer's testimony or otherwise deprived of the opportunity to evaluate it before trial or obtain his own expert witnesses. Indeed, defendant's only witness testified, without objection, that (1) methamphetamine is smoked in a pipe; (2) a glass pipe is commonly used; and (3) a lighter—preferably a little torch lighter—is used to smoke methamphetamine.

Because the officer was qualified to give the challenged testimony and because defendant's witness testified, without objection, to the same information, we conclude that any error in the admission of the officer's testimony did not rise to the level of plain error. *See id.; Stewart,* 55 P.3d at 124–25 (officer's testimony did not affect any of defendant's substantial rights where corroborated by other witnesses); *People v. James,* 117 P.3d 91, 95 (Colo.App.2004) ("any error was harmless in light of similar evidence, presented through other witnesses").

### III. Mittimus Error

Last, defendant contends, the People concede, and we agree, that the mittimus must be corrected to reflect the jury's verdict on the criminal mischief charge.

In July 2004, criminal mischief involving $100–500 property damage was punishable as a class 2 misdemeanor, whereas criminal mis-chief involving less than $100 property damage was punishable only as a class 3 misdemeanor. *See* Ch. 322, sec. 7, § 18–4–501(1), 2002 Colo. Sess. Laws 1581, *amended at* Ch. 384, sec. 7, § 18–4–501(1), 2007 Colo. Sess. Laws 1693.

Here, although defendant was originally charged with class 2 misdemeanor criminal mischief, on the morning of the trial, the prosecution successfully moved to amend the charge to class 3 misdemeanor criminal mischief (that is, involving damage of less than $100). Although the jury subsequently returned a guilty verdict on the amended charge, the mittimus reflects that defendant was convicted of the class 2, rather than class 3, misdemeanor form of criminal mischief. A remand is necessary for the trial court to correct the mittimus to reflect the true nature of the crime of which defendant was convicted.

The judgments are affirmed, and the case is remanded to the trial court with directions to correct the mittimus.

Judge MÁRQUEZ and Judge CASEBOLT concur.